EXHIBIT 14

Declaration of Pyotyr Sivirin

TRANSLATION FROM RUSSIAN

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEMTEK INTERNATIONAL INCORPORATED, ) | Civil Action No. |
| ) | 95-CV-11820-RCL |
| Plaintiff, ) | |
| ) | DECLARATION OF PYOTR |
| vs. ) | SIVIRIN IN SUPPORT OF |
| ) | DEFENDANTS' MOTION FOR |
| MERKURIY LTD. and PYOTR SIVIRIN, ) | RELIEF FROM JUDGMENT |
| ) | |
| Defendants. ) | |

PYOTR SIVIRIN, one of the defendants in the captioned suit and an officer of the corporate defendant, submits this declaration under 28 U.S.C. §1746 in support of defendants' motion for relief from judgment:

1. I am the Executive Director of the corporate defendant, Merkuriy, Ltd. ("Merkuriy"). I have held that position since the corporation was established in 1991.

2. I am an engineer by training. I do not speak or read English.

3. Merkuriy is a limited liability company established in October 1991 under the laws of the Russian Federation, with its principal place of business at Krasnoyarsk-26, Siberia, Russian Federation. Krasnoyarsk is located 2,215 miles (and four time zones) southeast of Moscow.

4. Merkuriy has a staff of 16 officers and employees. The

President of the company, Mr. Mikail F. Reshetnev, died in January 1996. In addition to myself, the other officer of the company is Mr. Alexandr P. Filushin, who acts as technical director.

5. Merkuriy's principal business is to act as project coordinator for commercial transactions relating to satellites and satellite capacity; Merkuriy itself does not own any satellites, but has access to satellites owned by the Russian Federation. Merkuriy does not maintain an office in the United States nor does Merkuriy do business in the State of Massachusetts directly or through an agent.

6. Merkuriy conducts its business with foreigners and foreign entities primarily out of offices in Moscow, and conducts its principal business out of the office in Krasnoyarsk-26. Krasnoyarsk-26 was established by the Soviet government and became the center of the Soviet Union's space and rocket industry and it was designated as a closed city and is generally off-limits to foreigners.

7. Neither I nor anyone representing Merkuriy has ever visited the State of Massachusetts, or conducted any personal business discussions or negotiations with anyone in that State.

8. Merkuriy does not own any real estate or personal property in the United States and does not maintain a bank account in the United States.

9. Merkuriy's only contacts with the State of Massachusetts have consisted of receiving various telefaxes in Russia between

November 1992 and July 1994 from Semtek International Incorporated ("Semtek"), and sending responses and notifications by telefax in the name or on behalf of Merkuriy to Semtek. During the 20-month period mentioned above, I sent approximately 19 telefaxes to Semtek or its president, Edward K. Shapiro ("Shapiro").

10. I met Shapiro in Moscow in the fall of 1992. He was introduced to me as a former Russian national and he speaks Russian fluently. Shapiro informed me that he had established a few months earlier a small company, Semtek; that he was the president of the company; and that the purpose of his company was to engage in business with emerging Russian private enterprises.

11. Following our meeting, Shapiro called me repeatedly in Russia and urged that I meet with him in Russia to explore a potential business relationship between Semtek and Merkuriy. Thereafter, in late October 1992, Shapiro visited me in Moscow, accompanied by James Newkirk ("Newkirk"), whom Shapiro introduced as the Executive Vice President of Semtek. Newkirk does not speak Russian, and my discussion was conducted almost exclusively with Shapiro, except on the occasion when Shapiro translated for Newkirk.

12. During those meetings, Shapiro explored with me potential avenues and modalities of establishing a business relationship between Merkuriy and Semtek in the satellite communications field as well as the export of Siberian timber. As a result of those Moscow meetings, Shapiro and I agreed to meet again to consider

3

creating a joint venture. Our understanding was memorialized on November 5, 1992 in a 1/2-page memorandum (entitled "Business Agreement" in the English translation that was submitted by Semtek to this court) that was signed by us on behalf of our respective companies.

13. I had a second round of meetings with Shapiro in Moscow in mid-December 1992. Shapiro was again accompanied by Newkirk, as well as by Pierre Quintana and Michael Garcia. The results of those meetings were memorialized in a 7-page "Protocol," drafted in English by Shapiro and Newkirk, which spelled out the principal features of any future joint venture that might be formed by Merkuriy and Semtek. As contemplated, the joint venture would have operated and marketed communications satellites for communications between Russia and the United States. Merkuriy's contribution to the venture would have been to provide capacity on a Russian SDRN satellite owned by the Russian Federation (registered with the International Telecommunications Union in Geneva, Switzerland as "WSDRN", and referred to on occasion as "Luch I"), which had been launched in 1989 and placed into geostationary orbit over the Atlantic Ocean, and was furnished with a ground station, equipment, and maintenance and engineering support in Russia. On its part, Semtek's contribution would have consisted of providing financing and marketing for the venture. The protocol was signed on December 18, 1992, by Shapiro and two other representatives, Newkirk and Garcia, on behalf of Semtek, and by me on behalf of Merkuriy.

4

14. Sometime thereafter, Shapiro informed me that to operate a communications satellite as envisaged by the proposed joint venture, Semtek was required to obtain a license from the U.S. Federal Communications Commission ("FCC"). Shapiro told me that since the planned joint venture was only in the discussion stage, Semtek was unable to apply for the license unless it could show that it was somehow authorized to act on behalf of Merkuriy, the licensee of the communications satellite. Shapiro and I thereupon agreed that I would send a telefax to Semtek stating that Semtek was authorized by Merkuriy "to act as its agent in marketing communications channels of the LUCH satellite," and that this letter "can be used to support" Semtek's license application to the FCC. I sent such a telefax to Semtek on February 8, 1993. In point of fact, no agency agreement has ever been signed or was ever contemplated between Merkuriy and Semtek. To my knowledge, Shapiro never applied for a license with the FCC.

15. In the latter part of April 1993, I met with Shapiro in Montreal, Canada, to discuss changes and further refinements in the proposed joint venture agreement between Merkuriy and Semtek. The results of that meeting were memorialized in a document drafted in the Russian language entitled "Letter of Intent to Establish a Joint Venture Between [Merkuriy and Semtek];" Shapiro and I signed this letter of intent on May 2, 1993.

16. Between May and December 1993, several telefaxes were exchanged between Semtek and Merkuriy, but no agreement was reached

5

on the terms and conditions of the proposed joint venture.

17. In August 1992 and in April 1993, Merkuriy entered into contracts in Russia with an American company, Transworld Communications, Inc. ("Transworld"), to engage in the commercial utilization of Russian-made WSDRN, CSDRN, and ESDRN communications satellites.

18. No final agreement on the scope of a joint venture and the responsibilities of the proposed joint ventures was ever reached between Merkuriy and Semtek; no document incorporating any such joint venture between Semtek and Merkuriy was ever finalized and executed.

19. Due to the absence of any financial support from Semtek for the organization of satellite services, in December 1993, Merkuriy entered into a financial contract with Transworld to modify two SSRD-2 (Luch-2) satellites registered with the International Telecommunications Union as ZSSRD-2 and CSSRD-2. I would like to emphasize that satellites Luch-2 are not mentioned either in the "Protocol" of November 5, 1992 nor in the "Letter of Intent" of May 2, 1993.

20. In July 1994, I learned that Semtek had written to Martin Marietta advising it that Semtek had entered into a contractual relationship with Merkuriy in December 1992 and May 1993, and that any agreement that Martin Marietta may have entered into regarding the commercial use of the Russian communications satellites may conflict with Semtek's contractual arrangements with Merkuriy.

6

21. I thereupon sent a telefax to Semtek on July 27, 1994, reminding it of the May 2, 1993 letter of intent with Merkuriy regarding the establishment of a joint venture, and that no such joint venture had ever come into existence. I requested Semtek to desist from informing third parties that it had a binding contractual relationship with Merkuriy. I furnished information copies of this telefax to Transworld and Martin Marietta.

22. Sometime in September 1995, the Siberian Engineering Academy, which receives all mail addressed to companies in Krasnoyarsk, delivered two documents in the English language addressed to Merkuriy and me. Since, as noted earlier, I do not speak English, and since the documents appeared to be official documents, I transmitted them to Merkuriy's lawyer in Moscow, Mr. Nikolay Prokhorov.

23. Attorney Prokhorov informed me that the documents consisted of a complaint filed in the above-captioned suit by Semtek against Merkuriy and me for breach of a contract that Merkuriy and I supposedly had entered into with Semtek in 1992 and 1993. Attorney Prokhorov further informed me that he refused to accept the documents because they had been improperly served.

24. As I stated earlier, Krasnoyarsk-26 is a closed city, and the city is also closed to all ordinary physical mail access, including express mail, due to its role in Russian military projects. Mail cannot be sent, and is not delivered, to individual addresses in Krasnoyarsk-26. Rather, all mail is routed through a

central facility which screens and sorts it. Individuals and businesses in Krasnoyarsk-26 must call in person at this facility to receive all mail addressed to them.

25. As I also stated earlier, I am not a lawyer by training, and I am not familiar with the intricacies of service of foreign judicial documents in Russia. Until the instant lawsuit was filed, Merkuriy had never been sued in the United States, or in any other foreign state, and with respect to such legal matters I rely on the advice of our attorneys in Moscow.

26. I later also learned that the attorney representing Semtek in this suit informed the court that on December 5, 1995 he had mailed by registered mail from Ithaca, New York copies of the complaint filed in this suit, together with a translation into Russian, addressed to Merkuriy and to me at "Krasnoyarsk 660033, Russia." The name Krasnoyarsk had, in the meantime, been changed to Zheleznogorsk, Krasnoyarski Krai. Neither Merkuriy nor I received these mail items.

27. I have now been informed by Merkuriy's lawyer in Moscow, Mr. Prokhorov, that on January 9, 1996, a default was entered by the Clerk of the Court against Merkuriy and myself for failure to respond to the lawsuit, and that on April 25, 1996, a judgment by default was entered by the court against Merkuriy and myself. Neither Merkuriy nor I have received copies of the entry of default by the Clerk, notice of any subsequent proceedings seeking a default judgment, or the entry by the Court of a default judgment

8

against Merkuriy and me on April 25, 1996.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Zheleznogorsk, Krasnoyarski Krai, Russian Federation, this ___ day of May, 1996.

_____<br/>PYOTR SIVIRIN

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SEMTEK INTERNATIONAL INCORPORATED, | ) | Civil Action No. |
| Plaintiff, | ) | 95-CV-11820-RCL |
| vs. | ) | DECLARATION OF PYOTR SIVIRIN IN SUPPORT OF DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT |
| MERCURY LTD. and PYOTR SIVIRIN, | ) | |
| Defendants | ) | |

ПЕТР СИВИРИН, один из ответчиков в озаглавленном процессе и должностное лицо корпоративного ответчика, представляет настоящую декларацию в соответствии с 28 U.S.C. §1746 в подтверждение ходатайства ответчиков для помощи в решении суда:

1. Я являюсь Исполнительным Директором корпоративного ответчика, Меркурий Лтд. ("Меркурий"). Я занимаю этот пост со дня основания корпорации в 1991 году.

2. Я являюсь инженером по образованию. Я не говорю и не читаю по английски.

3. Меркурий есть компания с ограниченной ответственностью, учрежденная в октябре 1991 в соответствии с законами Российской Федерации с основным местом проведения бизнеса в Красноярске-26, Сибирь, Российская Федерация. Красноярск расположен в 2,215 милях (четыре часовые зоны) от Москвы.

4. Меркурий имеет в штате 16 сотрудников. Президент компании Михаил Ф. Решетнев умер в январе 1996 года. В дополнение ко мне в компании другое лицо Александр П. Филкипша действует как технический директор.

5. Основным бизнесом Меркурия является разработка проектов, связанных с коммерческими использованием спутников и спутниковой пропускной способности. Сам Меркурий не имеет спутников, но имеет доступ к спутникам, которые принадлежат Российской Федерации. Меркурий не имеет офиса в Соединенных Штатах и не ведет бизнеса в штате Массачусетс ни непосредственно, ни через агента.

6. Меркурий деловые встречи с представителями иностранных предприятий проводит в Московском офисе, а основной бизнес ведет в офисе

1

г. Красноярска-26. Город Красноярск-26 входит в число закрытых городов Российской Федерации.

7. Ни я ни кто-либо из представителей Меркурия никогда не посещали штата Массачусетс или вели какие-либо личные переговоры относительно бизнеса с кем-либо в этом штате.

8. Меркурий не обладает частной или персональной собственностью в Соединенных Штатах и не имеет банковского счета в Соединенных Штатах.

9. Единственный контакт Меркурия со Штатом Массачусетс состоял в получении различных телефаксов в России с ноября 1992 года по июль 1994 года от компании Семтек Интернейшенел ("Семтек"). В течении 20-ти месяцев указанных выше я послал приблизительно 19 телефаксов в Семтек или его президенту Эдварду Шапиро ("Шапиро").

10. Я встречал Шапиро в Москве осенью 1992 года. Он был представлен мне как бывший гражданин России и он говорит по русски свободно. Шапиро информировал меня, что он уже основал несколько месяцев назад милое предприятие, Семтек, президентом которого он является, и что его компания имеет возможность финансирования создаваемых сетей спутниковой связи и самих спутников.

11. После нашей встречи, Шапиро звонил мне неоднократно в Россию и настаивал на встрече со мной в России для разработки взаимовыгодной организационной структуры для совместного бизнеса Меркурия и Семтека. После этого в конце октября 1992 года, Шапиро встретился со мной в Москве вместе с Джэймсом Ньюкерком ("Ньюкерк"), кого Шапиро представил как Исполнительного Вице Президента Семтека. Ньюкерк не говорил по русски и мои обсуждения велись исключительно с Шапиро, за исключением случая, когда Шапиро переводил для Ньюкерка.

12. Во время этих встреч, Шапиро обсуждал со мной потенциальные цели и структуру учреждения бизнес-отношений между Меркурием и Семтеком в области спутниковой связи, а также в области экспорта Сибирского леса. В результате этих Московских встреч, Шапиро и я согласились встретиться снова для рассмотрения создания совместного предприятия. Наши понимания были зафиксированы 5 ноября 1992 года в виде пол-страницы меморандума (озаглавленного по английски как "Business agreement", которое было представлено Семтеком в суд), которое было подписано ними от имени наших компаний.

13. Я имел второй раунд переговоров с Шапиро в Москве в середине декабря 1992 года. Шапиро снова был с Ньюкерком, а также с Пьером Квинтани и Майклом Гарсия. Результаты этих встреч, были изложены на 7 страницах "Протокола", проект которого был написан Шапиро и Ньюкерком на английском языке. В принято говорилось об основных особенностях любого будущего совместного предприятия, которое может быть сформировано Меркурием и Семтеком. Как предполагалось, это совместное предприятие должно было бы работать по нескольким направлениям в том числе оказывать услуги спутниковой связи и осуществлять сбыт Сибирского леса. Вклад Меркурия в это предприятие состоял бы в предоставлении пропускной способности Российского спутника SDRN, принадлежащего Российской Федерации (зарегистрированного в

2

Международном Союзе Электросвязи в Женеве, Швейцария как "WSDRN", и иногда называется "Луч"), который был запущен в 1989 году и выведен на геостационарную орбиту над Атлантическим Океаном и был оснащен наземной станцией, оборудованием, а также обслуживанием и технической поддержкой в России. Со своей стороны вклад компании Семтек состоял бы в предоставлении средств и маркетинговых услуг этому предприятию. Этот протокол был подписан 18 декабря 1992 года Шапиро и двумя другими представителями, Ньюкерком, и Гарсия, со стороны Семтека и мной со стороны Меркурия.

14. Некоторое время спустя Шапиро информировал меня, что для работы со спутником связи как предусматривалось структурой совместного предприятия, Семтеку требуется получить лицензию Федеральной Комиссии по Связи США ("FCC"). Шапиро говорил мне, что коль скоро планируемое совместное предприятие находится на стадии обсуждения, Семтек не в состоянии обратиться за лицензией пока не будет показано, что это каким-либо образом санкционировано, чтобы действовать от лица Меркурия, как имеющего лицензию на спутник связи. Шапиро и я вслед за тем согласились, что я направлю телефакс в адрес Семтека, заявляющий, что Семтек санкционируется Меркурием "действовать как его агент в области маркетинга каналов связи спутника Луч" и, что это письмо " может быть использовано для поддержки получения Семтеком лицензии в FCC. Я направил такой телефакс Семтеку 8 февраля 1993 года. В действительности, никакого финансового соглашения по аренде спутникового ресурса не было подписано или когда-либо рассматривалось между Меркурием и Семтеком. Повидимому, Семтек никогда не обращался за лицензией в FCC, так как официального подтверждения в адрес Меркурия от Семтека о получении им лицензии FCC не поступало.

15. В конце апреля 1993 года я встречался с Шапиро в Монреале, Канада, для обсуждения изменений и усовершенствований в протоколе по предложенному совместному предприятию между Меркурием и Семтеком. Результаты этой встречи были зафиксированы в документе проект которого на русском языке назывался "Письмо о намерении создать Совместное предприятие между [Меркурием и Семтеком]"; Шапиро и Я подписали это письмо о намерении 2 мая 1993.

16. Между маем и декабрем 1993 года, Семтек и Меркурий обменялись несколькими телефаксами, но не было достигнуто никакого соглашения по структуре и условиям предложенного совместного предприятия.

17. В августе 1992 и апреле 1993 года Меркурий заключил в России соглашения о сотрудничестве с Американской компанией Трансвок Коммуникейшн ("Трансвок") для коммерческого использования Российских спутников связи WSDRN, CSDRN и ESDRN.

18. Никогда не достигались какие-либо соглашения относительно совместного предприятия и ответственностей предложенных совместных предприятий между Меркурием и Семтеком; никогда не существовал в окончательном виде и не выполнялся какой-либо документ регистрирующий любое совместное предприятие между Меркурием и Семтеком.

19. В связи с тем, что со стороны Семтек не поступило никакой финансовой поддержки для организации работ по оказанию услуг спутниковой связи, в декабре 1993 года Меркурий заключил финансовый договор с компанией

3

Трансволд на доработку двух спутников SSRD-2 (зарегистрированных Международным союзом электросвязи как ZSSRD-2 и CSSRD-2) ("Луч-2") и коммерческого использования этих спутников.

Я хотел бы подчеркнуть, что спутники "Луч-2" не упоминаются ни в "Протоколе" от 5 ноября 1992 года, ни в "Письме о Намерении" от 2 мая 1993 года.

20. В июле 1994 года я узнал, что Семтек написал Мартин Мариетте возможно со о том, что Семтек находится в вошел в контрактные отношения с Меркурием в декабре 1992 года и в мае 1993, и что любое соглашение которое Мартин Маркетта может заключить относительно коммерческого использования Российских спутников связи может привести к конфликту в части соглашения Семтека и Меркурия.

21. В следствии этого, я послал 27 июля 1994 года телефакс в Семтек, с напоминанием, что 2 мая 1993 года было письмо о намерении учредить совместное предприятие, и что никакого совместного предприятия не образовалось. Я потребовал от Семтека воздержаться от информирования третьей стороны, о том что было контрактное отношение с Меркурием. Я представил копии этих телефаксов в Трансволд и Мартин Мариетту.

22. Как-то в конце августа или начале сентября 1995 года Меркурий и я получили по почте в Красноярск-26 два документа на английском языке, которые как оказалось были отправлены адвокатом из Нью-Йорка. Как я говорил ранее, я не говорю по английски и, коль скоро документы оказались официальными, я переслал их в Москву адвокату Меркурия м-ру Николаю Прохорову.

23. Адвокат Прохоров информировал меня, что эти документы содержит жалобу Семтека против Меркурия и меня, представляющую в выше указанный суд за нарушение контракта, который Меркурий и я казалось бы подписали с Семтеком в 1992 году и 1993. Адвокат Прохоров далее информировал меня, что он отказывается принять эти документы, так как они выполнены не соответствующим образом.

24. Как я говорил ранее, Красноярск-26 относится к числу закрытых городов Российской Федерации, и этот город также закрыт для всей обычной письменной (типа EXPRESS MAIL). Письмо не может быть послано и доставлено непосредственно индивидуальному адресату в Красноярск-26. Далее, все письма идут через специальный центр, где они сортируются. Индивидуальные лица и бизнесмены в Красноярск-26 могут ловчить пересылаемое в этот центр, чтобы получить все письма адресованные им.

25. Как я утверждал ранее, я не являюсь адвокатом по профессии и не знаком с особенностями (тонкостями) толкования одних и тех же документов иностранными и Российскими юридическими службами. Пока не был подан данный судебный иск, Меркурий никогда не привлекался к суду в Соединенных Штатах, или в каком-либо другом иностранном государстве, и в соответствии с этими юридическими вопросами я полагаюсь на совет моих адвокатов в Москве.

26. Позднее я также узнал, что адвокат представляющий Семтек в этом процессе информировал суд о том, что 5 декабря 1995 года он послал зарегистрированное письмо из Итаки, штат Нью-Йорк, копии обвинительных

4

зарегистрированное письмо из Итаки, штат Нью-Йорк, копии обвинительных заявлений в суд, вместе с переводом на русский язык, адресованные Меркурию и мне как "Красноярск 660033, Россия". Ни Меркурий, ни я не получали этих писем. Однако я отмечаю, что почтовый адрес Меркурия изменился - Красноярский край, 660033, г. Железногорск.

27. Я уже информирован адвокатом Меркурия в Москве, м-ром Прохоровым, что 9 января 1996 года, против меня и Меркурия возбужден заочный судебный процесс из-за отсутствия ответа на иск, и что 31 апреля 1996 года было вынесено заочное решение суда против Меркурия и меня лично. Ни Меркурий ни я не получали копии от Секретаря суда о рассмотрении процесса заочно, уведомлении о любых последующих судопроизводствах добивающихся заочного разбирательства, или начале заочного разбирательства против Меркурия и меня в 25 апреле 1996.

Я заявляю под страхом лжесвидетельствования по законам Соединенных Штатов, что вышеупомянутое есть правда и верно.

Выполнено в г. Железногорске, Красноярского края, Российской Федерации, сегодня 13 мая 1996 года.

Петр Сибирин

5