UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------------------x
SEMTEK INTERNATIONAL INCORPORATED,

                               Plaintiff,                     Civil Action No.:
                                                              1:09-cv-10183-RWZ

   - against –

INFORMATION SATELLITE SYSTEMS /AKA/          **DEFAULT JUDGMENT**
"ACADEMICIAN M.F. RESHETNEV INFORMATION
SATELLITE SYSTEMS" /AKA/ "ISS-RESHETNEV          **(PROPOSED)**
COMPANY," /AKA/ "ACADEMICIAN M.F.                     **ORDER**
RESHETNEV NAUCHNO-PROIZVODSTVENNOE
OBIEDINENIE PRIKLADNOI MEKHANIKI"
/AKA/ "NPO PM,"
                                 Defendant.
---------------------------------------------------------------------------x

        On November 18, 2010, Semtek's motion for entry of a default judgment against Information Satellite Systems ("ISS") pursuant to 28 U.S.C. §1608(e) was presented at a hearing. After the hearing on the motion and in consideration of the memorandum, affidavits, exhibits, authorities cited, and the arguments of counsel, the Court finds that Semtek has established its claim for relief against ISS by evidence satisfactory to this Court as follows:

        1.     A default was entered by the Clerk of Court against ISS on July 27, 2010.

        2.     ISS is not a minor, an incompetent person or a current member of the military service.

        3.     ISS was served with the Amended Complaint and Summons, Motion for Default, Motion for Default Judgment and accompanying papers, and Notice of Hearing, in accordance with 28 U.S.C. §1608(b)(3). These pleadings and documents were received and signed for by ISS. To date, ISS has not answered or otherwise appeared in this action.

        4.     In 1992, Semtek entered into an agreement with Merkuriy LTD ("Merkuriy") and its Executive Director, Pyotr Sivirin ("Sivirin"), to market access to certain satellites and provide

commercial communications services. The state owned manufacturer and operator of the satellites identified in the Semtek-Merkuriy agreement was a company known as NPO PM. The agreement was allegedly breached and on August 15, 1995, Semtek filed an action in this Court, Case No. 95-CV-11820 (RCL), for breach of contract, fraud, RICO violations and other claims ("the underlying litigation").

5. On April 12, 2000, a final judgment for monetary and injunctive relief was entered against Merkuriy and Sivirin in favor of Semtek in the sum of $381,396,000.00, plus interest and costs. The judgment has not been paid.[1] The judgment also enjoined defendants from engaging in any act thwarting Semtek's right to market and develop communication services on certain NPO PM satellite systems, including commercial communications on the Loutch-series satellites. According to Semtek, the right to globally market excess capacity on NPO PM's satellites was the cornerstone of the contract and the sole asset and primary business purpose of Merkuriy.

6. Semtek claims that ISS is liable for the judgment because it is the successor-in-interest and a mere continuation of the unitary enterprise comprised of predecessors NPO PM and Merkuriy. Semtek alleges that at the time of the Semtek-Merkuriy contract and thereafter, NPO PM was the alter ego of Merkuriy, having exercised pervasive control, intermingled business activities and assets and disregarded corporate formalities all in furtherance of a common enterprise. After entry of the judgment, Semtek claims Merkuriy (by then doing business as Merkuriy Telesat) ceased operations and later began liquidation proceedings. At that time, the management and the key asset of Merkuriy (the right to market excess capacity on NPO PM satellites) were transferred to NPO PM such that NPO PM was a mere continuation of

---

[1] Cash and stock valued at less than $15,000 was recovered from a third party creditor of Merkuriy.

Merkuriy. Thereafter, NPO PM continued to market its commercial satellite business to the same customers, from the same location with the same officers. Finally, as part of a corporate reorganization in 2008, NPO PM's assets and obligations were expressly assumed by ISS. The transformation included ISS's acquisition of the right to market excess capacity on NPO PM satellites which was the subject of the Semtek-Merkuriy contract. Semtek claims ISS is the same as, or a mere continuation of, NPO PM. Thus, Semtek seeks the imposition of successor liability on ISS as the continuing corporation to its predecessors, NPO PM and Merkuriy. Semtek has provided affidavits and documents in support of its claims. In light of ISS's default, this Court accepts Semtek's uncontested evidence as true. *Acosta v. The Islamic Republic of Iran*, 574 F.Supp.2d 15, 24 (D.D.C. 2008).

7.  Corporate liability based on an alter ego relationship between entities is demonstrated by showing "pervasive control" and "direct participation" by one company over another. *My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748, 752 (Mass. 1968). In deciding whether to disregard the corporate entity courts consider several factors including, among others, the extent of control; intermingling of activity and assets; the existence of a common enterprise; thin capitalization; failure to observe corporate formalities; and substantial disregard of corporate entities. *See Attorney General v. M.C.K., Inc.*, 736 N.E. 2d 373, 380-81 n. 19 and 20 (Mass. 2000) (adopting trial judge's findings that because entities had same officers, thin capitalization, same corporate address, executives signing agreements on behalf of both entities, and that the controlling entity was the ultimate decision-maker it was proper to disregard the corporate structure).

8.  According to the Semtek affidavits and accompanying documents, NPO PM created and initially owned the judgment debtor Merkuriy. Thereafter, NPO PM installed its own

executives at the helm of Merkuriy. Judgment debtor Pyotr Sivirin, NPO PM's Deputy Director, became Executive Director of Merkuriy and Michail Reshetnev, NPO PM's chief executive officer, was Merkuriy's President and Chairman. Merkuriy's company headquarters were located within NPO PM's top-secret and "off-limits" office complex at Krasnoyarsk-26 in Siberia. According to statements by businessmen who dealt with both companies, Merkuriy was known as NPO PM's "commercial arm," "designee" and was considered "one in the same" with respect to NPO PM's satellite communications business. Merkuriy was thinly capitalized and had no tangible assets other than access to excess capacity on NPO PM's satellites, the key element of the Semtek-Merkuriy contract. Semtek's documents and affidavits demonstrate that the principal directors and chief executives, including Sivirin, executed several agreements on behalf of both Merkuriy and NPO PM using NPO PM letterhead. The evidence also shows that NPO PM exercised pervasive control over Merkuriy by directing payments, cancelling contracts and otherwise being the ultimate decision-maker with regard to the marketing of excess capacity on its satellites to other customers, including Transworld and Lockheed Martin. In sum, at the time of the contract and thereafter, NPO PM and Merkuriy had the same officers, including judgment debtor Sivirin, simultaneously serving in the highest executive management positions of both companies; they had the same offices and facilities; they serviced the same customers; and all of this was done in furtherance of the same satellite communications business. Accordingly, this Court finds that Merkuriy and NPO PM were alter egos and therefore disregard of their corporate forms is warranted.

9.  Under Massachusetts law, successor liability is established when (1) the successor expressly or impliedly assumes liability of the predecessor; (2) the transaction between them amounts to a consolidation or merger; (3) the transferee is merely a continuation of the

transferor; or (4) the transfer is entered into fraudulently in order to escape liability for debts. *See Milliken & Company v. Duro Textiles, LLC*, 887 N.E.2d 244, 254-55 (Mass. 2008). While no single factor is dispositive, Massachusetts courts consider the following factors in deciding whether to characterize a change in status as a *de facto* merger: (1) continuation of the predecessor enterprise and ownership (management, personnel, physical location, assets and general business operations); (2) cessation of the predecessor corporation's ordinary business operations; and, (3) assumption by the successor corporation of the predecessor's obligations incurred in connection with the uninterrupted continuation of the normal business of the predecessor corporation. *Id.* at 255. Similarly, a corporation is deemed a "mere continuation" when there is continuity of directors, officers, and stockholders, as well as the continued existence of only one corporation after the sale or transfer of assets. *See National Gypsum Co. v. Continental Brands Corp.*, 895 F.Supp. 328, 342 (D.Mass. 1995)(noting successor liability is found where the successor continued the predecessor's business operations, employed the same management and the predecessor was essentially without assets after the transaction); *see also In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F.Supp. 1010, 1015-16 (D.Mass. 1989)(same).

10.    Following entry of judgment in the underlying litigation, Merkuriy's key executives, facilities, assets and business operations were transferred to or absorbed by NPO PM. According to the Semtek affidavits and documents, Merkuriy's chief executive, Sivirin, remained as a key NPO PM executive; NPO PM continued to use the same facilities at the K-26 complex and the same telegraph address and telefax numbers; and, NPO PM acquired Merkuriy's key business asset – the ability to market excess capacity on the Loutch and other NPO PM satellites. Furthermore, Merkuriy was essentially without assets and ceased operations

once NPO PM took control of marketing the Loutch satellites. Based upon these indicia of corporate continuation, this Court finds that NPO PM was the same company as Merkuriy and therefore the imposition of successor liability is appropriate.

11. By March 3, 2008, NPO PM was transformed into ISS, a company owned by the Russian Federation. According to ISS documents, ISS acquired all of NPO PM's assets and obligations as part of this reformation. It is well settled that expressly assuming assets and liabilities is an independent basis for finding successor liability. The affidavits and documents submitted by Semtek demonstrate that the assets transferred to ISS include the right to market excess communications capacity on NPO PM's satellites, which was the cornerstone of the Semtek-Merkuriy agreement. The evidence presented supports a finding that ISS is a mere continuation of NPO PM. The new ISS is the same as the old NPO PM. They have the: same location; same officers (including Sivirin) and employees; same business activities and assets; and the same ownership. According to ISS documents submitted to the Court, Sivirin, the former Merkuriy and NPO PM executive, recently appeared on behalf of ISS to provide a marketing briefing to foreign customers concerning satellite operations; ISS now lists Merkuriy and NPO PM's former clients as its own since the 1990s; and ISS continues to market the Loutch for commercial use at the same location identified in the Semtek-Merkuriy agreement in violation of the injunction entered in the underlying litigation. Accordingly, this Court concludes that imposition of successor liability on ISS, the continuing corporation to its predecessors, NPO PM and Merkuriy, is warranted based on the evidence presented by Semtek.

12. For the foregoing reasons, this Court finds that Semtek has established by satisfactory evidence that imposition of successor liability against ISS is appropriate and

therefore ISS is liable to Semtek for the judgment previously entered against Merkuriy in the underlying litigation.

THEREFORE, IT IS ORDERED and ADJUDGED that default judgment is entered against defendant ISS; and it is further

ORDERED AND ADJUDGED that plaintiff Semtek recover from defendant ISS the sum of $381,396,000.00 with interest thereon from July 1, 1995, until paid, together with costs to be taxed by the Clerk; and it is further

ORDERED AND ADJUDGED that defendant ISS be, and hereby is enjoined from engaging in any act thwarting the purpose of the agency agreement alleged in the complaint, including entering into or carrying out any agreement with Transworld Communications Ltd. or Lockheed Martin Corporation as successor by merger to Martin Marietta Corporation which would have the effect of thwarting said agency agreement.

This Order will be served in accordance with § 1608(e).

Dated:  _____, 2011

_____
UNITED STATES DISTRICT JUDGE