UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEMTEK INTERNATIONAL INCORPORATED,<br><br>              Plaintiff,<br><br>     v.<br><br>ACADEMICIAN M.F. RESHETNEV INFORMATION SATELLITE SYSTEMS,<br><br>              Defendant. | C.A. NO. 1:09-CV-10183-RWZ<br><br>**[ LEAVE TO FILE GRANTED ON JUNE 8, 2011]** |

**MEMORANDUM OF DEFENDANT
ADADEMICIAN M.F. RESHETNEV INFORMATION SATELLITE SYSTEMS
IN SUPPORT OF ITS MOTION TO VACATE DEFAULT JUDGMENT**

Ralph T. Lepore, III (BBO #294420)
Michael T. Maroney (BBO #653476)
Benjamin M. McGovern (BBO #661611)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
ralph.lepore@hklaw.com
michael.maroney@hklaw.com
benjamin.mcgovern@hklaw.com

*Attorneys for Defendant Information Satellite Systems*

Date: June 8, 2011

i

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................3

ARGUMENT ..........................................................................................................................13

I.  The Default Judgment Is Void and This Lawsuit Must Be Dismissed Because ISS
is Immune From Suit Under the FSIA ...........................................................................14

    A.  Semtek Cannot Demonstrate That Any FSIA Exception Overrides ISS's
Presumption of Immunity ......................................................................................16

        1.  The FSIA Commercial Activity Exception Does Not Apply to ISS .........17

        2.  The FSIA Waiver Exception Does Not Apply ...........................................21

    B.  ISS Was Not Served With Process Properly............................................................23

II.  The Default Judgment Must Be Vacated Because Semtek Procured It Through
Misrepresentations To This Court ..................................................................................26

    A.  Semtek Misrepresented to This Court That Massachusetts Law Governs the
Issue of Successor Liability ...................................................................................26

    B.  Semtek Misrepresented to this Court That Merkuriy Transferred its Assets to
NPO PM...................................................................................................................29

    C.  Semtek Misrepresented to This Court That a Contract Existed Between Itself
and Merkuriy............................................................................................................30

III.  The Default Judgment Must Be Vacated In the Interest of Justice..................................33

    A.  The Monetary Component of the Default Judgment Is Speculative and
Includes Treble Damages in Violation of the RICO Act and the FSIA.................33

        1.  The Damages Award Entered in the Merkuriy Lawsuit is
Speculative ...............................................................................................34

        2.  The Trebling of Damages Violates the RICO Act's Presumption
Against Extraterritorial Application ..........................................................37

        3.  The Trebling of Damages Violates FSIA's Prohibition Against
Punitive Damages .....................................................................................37

    B.  The Injunctive Component of the Default Judgment Violates the Specificity
Requirements of Fed. R. Civ. P. 65(d)...................................................................38

IV.  ISS Can Assert Potentially Meritorious Defenses on the Merits.....................................40

    A.  This Court Lacks Subject Matter and Personal Jurisdiction to Adjudicate
Semtek's Claims Because ISS is Immune From Suit under the FSIA ...................40

    B.  This Court Lacks Personal Jurisdiction Over ISS...................................................41

C.      Semtek Failed to Serve ISS With Process Properly..................................................41

D.      Semtek Fails to State a Claim That ISS is Successor to Merkuriy ........................41

E.      Semtek Fails to State a Claim that a Contract Existed Between Semtek and Merkuriy .......................................................................................................................41

F.      Semtek's Claims Are Subject to Dismissal in Favor of a More Convenient Forum ............................................................................................................................41

G.      Semtek's Claims Are Barred by the Equitable Doctrine of Laches .......................42

H.      Semtek's Claims Are Barred Because They Seek Speculative Damages ..............42

I.      Semtek's Claims Are Barred Because the RICO Act Does Not Apply Here ........42

J.      Semtek's Claims Are Barred Because the FSIA Prohibits the Award of Punitive Damages .................................................................................................................43

K.      Semtek Fails to State Claims Upon Which Relief May Be Granted ....................43

CONCLUSION.............................................................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abur v. Republic of Sudan*, 437 F. Supp. 2d 166 (D.D.C. 2006)...................................15

*Albert v. Warner-Lambert Co.*, 234 F. Supp. 2d 101 (D. Mass. 2002)........................35

*Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33 (2d Cir. 1993)...............20, 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2009) ....................................................43

*Butler v. Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009) ...................................................23

*Canales v. A.H.R.E., Inc.*, 254 F.R.D. 1 (D.D.C. 2008) .................................................26

*Cedeno v. Intech Group, Inc.*, 733 F. Supp. 2d 471 (S.D.N.Y. 2010) ...........................37

*Century Int'l Arms, Ltd. v. Federal State Unitary Enters. State Corp. Rosvoorouzhenie*, 172 F. Supp. 2d 79 (D.D.C. 2001) ...................................................................26, 28

*Colonial Bank v. Compagnie Generale Maritime et Financiere*, 645 F. Supp. 1457 (S.D.N.Y. 1986) ..............................................................................................21

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003)........................................................22

*Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24 (1st Cir. 1998) ......................14

*Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006) .......37

*Fagot Rodriguez v. Republic of Costa Rica*, 139 F. Supp. 2d 173 (D.P.R. 2001)........15

*In re Bonham*, 251 B.R. 113 (D. Al. 2000).....................................................................36

*Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97 (1st Cir. 2009) ..........................42

*Karak v. Bursaw Oil Corp.*, 288 F.3d 15 (1st Cir. 2002)................................................26

*Kuklachev v. Gelfman*, No. 08-CV-2214, 2008 WL 5068860 (E.D.N.Y. 2008) ...........24

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...................................................36

*Magness v. Russian Federation*, 247 F.3d 609 (5th Cir. 2001).....................................23

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786 (1st Cir. 1990)....43

*Morgan Equip. Co. v. Novokrivorogsky State Ore Mining and Processing Enerprise*, 57
F. Supp. 2d 863 (N.D. Cal. 1998) .................................................................................16, 19

*Morrison v. Nat'l Australia Bank Ltd.*, – U.S. –, 130 S. Ct. 2869 (2010).....................................37

*Motorsport Eng'g, Inc. v. Maserati, S.P.A.*, 183 F. Supp. 2d 209 (D. Mass. 2001) ......................27

*Museum of Fine Arts, Boston v. Seger-Thomschitz*, 623 F.3d 1 (1st Cir. 2010)...........................42

*Nederlandsche Handel-Maatschappij, N.V. v. Jay Emm, Inc.*, 301 F.2d 114 (2d Cir. 1962)........26

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29 (2d Cir. 2010) ....................................37

*NYSA-ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 38 (2d Cir. 1993) ..........................17

*Ownby v. Cohen*, 19 F. Supp. 2d 558 (W.D. Va. 1998).................................................................43

*Peterson v. Islamic Republic of Iran*, 627 F.3d 1117 (9th Cir. 2010) ...........................................14

*Petrello v. White*, 533 F.3d 110 (2d Cir. 2008).............................................................................40

*Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543 (D.C. Cir. 1987) .......................15

*Precision Etchings & Findings, Inc. v. LGP Gem Ltd.*, 953 F.2d 21 (1st Cir. 1992)....................14

*Project B.A.S.I.C. v. Kemp*, 947 F.2d 11 (1st Cir. 1991) ..............................................................39

*Raccoon Recovery, LLC v. Navoi Mining and Metallurgical Kombinat*, 244 F. Supp. 2d
1130 (D. Colo. 2002) ...........................................................................................................21, 22

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ....................................................20

*Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003)............................................38

*Sanchez v. Banco Central De Nicaragua*, 770 F.2d 1385 (5th Cir. 1985) ...................................17

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)...............................................................................15

*Schmidt v. Lessard*, 414 U.S. 473 (1974) ....................................................................................39

*Sea-Land Serv., Inc. v. Ceramica Europa II, Inc.*, 160 F.3d 849 (1st Cir. 1998) ........................14

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala
Navala*, 989 F.2d 572 (2d Cir. 1993) .....................................................................................15

*Semtek International Incorporated v. Merkuriy Ltd., et. al.*, Civil Action No. 95-cv-
11820-RCL (D. Mass.) .............................................................................................................4

*Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202 (2d Cir. 1984)............................................36

*Silica Tech, LLC v. J-Fiber, GmbH*, Civil Action No. 06-10293-WGY, 2009 WL 2579432 (D. Mass. May 19, 2009) ............................................................................26, 27, 28

*Silva v. American Airlines, Inc.*, 960 F. Supp. 528 (D.P.R. 1997)..................................36

*Stena Rederi AB v. Comision de Contratos del Comite Ejecutive General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C.*, 923 F.2d 380 (5th Cir. 1991)...................................................................................................17

*Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transportation Co., Inc.*, 953 F.2d 17 (1st Cir. 1992).........................................26, 40

*TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005) ................18

*Tuckerbrook Alternative Invest., LP v. Banerjee*, Civil Action No. 09-11672-WGY, 2010 WL 4867608 (D. Mass. November 30, 2010) ..................................................13, 33

*United States v. Norris*, 271 F.3d 262 (5th Cir. 2000)..................................................35

*United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232 (10th Cir. 1994) ..........................................................................................................21

*Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010) ........................18

*Youming Jin v. Ministry of State Security*, 475 F. Supp. 2d 54 (D.D.C. 2007) .............16

*Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511 (D.C. Cir. 1988) ...........................19

*Zernicek v. Brown & Root, Inc.*, 826 F.2d 415 (5th Cir. 1987) .....................................21

STATE CASES

*Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547 (2008) ......................................7, 27, 28, 30

*My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614 (1969) ..............................7, 27

*Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703 (1992) .......................................33

FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

18 U.S.C. § 1946(c) .......................................................................................................13, 34

28 U.S.C. § 1603(a)-(b) ................................................................................................15

28 U.S.C. § 1603(b) .........................................................................................................4

28 U.S.C. § 1605(a)(1)...................................................................................................21

28 U.S.C. § 1605(a)(2)...................................................................................................17

28 U.S.C. § 1606 ..........................................................................................................37, 38

28 U.S.C. § 1608(b) ..........................................................................5, 6, 23, 24, 25

Fed. R. Civ. P. 4(e) .........................................................................................................24

Fed. R. Civ. P. 44.1 ........................................................................................................28

Fed. R. Civ. P. 55(c) .......................................................................................................13

Fed. R. Civ. P. 60(b) ........................................................................1, 2, 13, 14, 33

Fed. R. Civ. P. 65(d) ......................................................................................2, 38, 39, 40

Fifth Amendment, U.S. Constitution ...........................................................................18

OTHER AUTHORITIES

Webster's II New College Dictionary 910 (3d ed. 2005)...........................................31

## INTRODUCTION

This lawsuit represents the second effort by plaintiff, Semtek Incorporated ("Semtek"), to manufacture an unearned payday from a joint venture that was never consummated.  In 1995, Semtek filed a lawsuit in this Court against a Russian limited liability company known as Merkuriy Ltd. ("Merkuriy"), alleging that Merkuriy breached a joint venture agreement between the parties that was intended to commercialize certain Russian satellites after the fall of the Soviet Union.  This Court never passed on the merits of Semtek's claims, but instead entered an approximately $383 million default judgment after Merkuriy failed to participate in discovery.

Apparently frustrated in its efforts to collect from Merkuriy, Semtek is now back before this Court, sixteen years later, seeking to enforce the same default judgment against defendant, Academician M.F. Reshetnev Information Satellite Systems ("ISS"), an entirely different entity that is wholly-owned by the government of the Russian Federation.  Although Semtek has again succeeded in obtaining a default judgment from this Court in this second lawsuit, multiple grounds exist under Fed. R. Civ. P. 60(b) to vacate the default judgment.

First, the default judgment must be vacated as void under Rule 60(b)(4) because ISS is immune from suit in this country under the Foreign Sovereign Immunities Act ("FSIA").  It is undisputed that ISS is an agency or instrumentality of the Russian Federation for purposes of the FSIA.  And Semtek has not overcome ISS's presumptive immunity with evidence that an exception to the statute applies.  Nor was ISS served with process in the exclusive manner required by the statute.  This Court therefore lacks subject matter and personal jurisdiction to consider Semtek's claims against ISS – a defect that mandates both removal of the default judgment and dismissal of this entire lawsuit.

Second, the default judgment should be vacated under Rule 60(b)(3) because Semtek procured the judgment in ISS's absence by making the following misrepresentations to this Court:

- Representing that Massachusetts principles of corporate successor liability impute Merkuriy's liabilities to ISS, without informing the Court that Russian law, which clearly governs the interrelationship between Russian entities under a choice of law analysis, does not recognize that concept.

- Representing that Merkuriy transferred its assets to the immediate predecessor of ISS when, in reality, all of the shares of Merkuriy were sold to a completely different and unrelated entity in 2002.

- Representing that a binding joint venture agreement was reached between Semtek and Merkuriy when the documentary evidence in the record establishes conclusively that the parties' discussions never progressed past the letter of intent stage.

Third, the default judgment should be vacated under Rule 60(b)(6) in the interest of justice because the underlying default judgment entered against Merkuriy is fatally flawed. The monetary component of that default judgment is based on (i) a speculative and inadmissible expert affidavit, and (ii) multiple damages assessed in violation of the FSIA's prohibition against punitive damages and the presumption against extraterritorial application of the Racketeer Influenced and Corrupt Organizations Act. Similarly, the injunctive component of the default judgment fails the specificity requirements of Fed. R. Civ. P. 65(d) because it does not describe the conduct enjoined beyond an empty reference to an alleged "agency agreement."

Finally, the default judgment should be vacated because ISS possesses numerous potentially meritorious defenses that it will assert vigorously on the merits of Semtek's claims if the default judgment is vacated including, but not limited to, lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim, forum non conveniens, laches, and lack of damages.

For the foregoing reasons, as more particularly described below, this Court should vacate the default judgment and dismiss this lawsuit with prejudice based on a lack of subject matter and personal jurisdiction.

FACTUAL BACKGROUND

**Parties**

Plaintiff, Semtek, is a New Jersey corporation that is allegedly the successor by merger to a prior corporation of the same name that had been incorporated in Massachusetts. *See* Compl. (Dkt. No. 1), ¶ 2.

Defendant, ISS, is a Russian open joint stock company with a primary place of business in Krasnoyarsk, Russia.[1]  *See id.*, ¶ 3.  ISS employs over 6,350 individuals and specializes in the design, development and manufacture of high performance spacecraft and satellite systems, including mission-critical satellite testing and qualification as well as satellite-in-orbit control and support.  *See id.*, ¶ 5; Affidavit of Pyotr Sivirin ("Sivirin Aff."), ¶ 3.  ISS does not own any assets in the United States.  The entirety of ISS's contacts with the United States consist of: (1) an agreement to purchase semiconductors and solar cells from a New Jersey corporation with a principal place of business in New Mexico; (2) two licensing and royalty agreements for the right to use a Proton launcher with a Delaware corporation with a principal place of business in Virginia; and (3) an agreement to purchase electric satellite components from a Delaware corporation with a principal place of business in California for the supply of electric satellite components.  *See* Sivirin Aff., ¶ 4.

ISS shares are wholly-owned by the Russian Federation through its Federal Agency on Management of Federal Property.  *See id.*, ¶ 3.  It is undisputed in this lawsuit that ISS is an

---

[1] ISS intends to contest this matter vigorously and is appearing specially to submit this motion without waiver of its right at any later time to rely upon any available defenses, including, but not limited to, lack of subject matter jurisdiction, lack of personal jurisdiction, and insufficiency of service of process.

agency or instrumentality of the Russian Federation for purposes of the Foreign Sovereign

Immunities Act ("FSIA"), 28 U.S.C. § 1603(b).  *See* Compl. (Dkt. No. 1), ¶¶ 3-4; Am. Compl.

(Dkt. No. 7), ¶¶ 3-4.

**Filing and Service of the Instant Lawsuit**

On February 6, 2009, Semtek filed the instant lawsuit against ISS seeking to enforce a

default judgment and injunction entered by this Court against Merkuriy Ltd. ("Merkuriy") and

Pyotr Sivirin ("Sivirin") in a prior lawsuit captioned *Semtek International Incorporated v.*

*Merkuriy Ltd., et. al.*, Civil Action No. 95-cv-11820-RCL (D. Mass.) (the "Merkuriy lawsuit").

*See* Compl. (Dkt. No. 1), ¶ 1.  As will be described more particularly below, Semtek's central

allegation in the Merkuriy lawsuit was that the defendants breached a purported joint venture

agreement reached in the early 1990's between the parties concerning the exclusive rights to

commercialize certain Russian satellites.

In the instant lawsuit, Semtek alleges that it is the holder in due course of the default

judgment entered in the Merkuriy lawsuit on April 12, 2000.  That judgment orders Merkuriy

and Sivirin to pay a sum of $381,396,000.00, with interest thereon from July 1, 1995, and further

enjoins the defendants from:

> [E]ngaging in any act thwarting the purpose of the agency agreement alleged in the
> complaint including entering into or carrying out any agreement with Transworld
> Communications Ltd. or Lockheed Martin Corporation as successor by merger to Martin
> Marietta Corporation which would have the effect of thwarting said agency agreement.

*See id.*, ¶ 1-2 & Ex. A.

Semtek contends that ISS is liable for the default judgment entered in the Merkuriy

lawsuit because ISS is the legal successor to Merkuriy.  *See, e.g., id.*, ¶ 29.  Specifically, Semtek

alleges that ISS was established on or about March 3, 2008 through the acquisition, transfer or

merger of an entity known as Academician M.F. Reshetnev Nauchno-Proizvodstvennoe

Obiedinenie Prikladnoi Mekhaniki ("NPO PM"), which in turn was an alter ego or successor in interest to Merkuriy. *See id.*, ¶¶ 18, 26.  The relief requested in Semtek's complaint seeks: (1) a declaration that Merkuriy, NPO PM and ISS are alter egos of each other; (2) a declaration that ISS is the successor in interest to Merkuriy and NPO PM; (3) a declaration that the default judgment in the Merkuriy lawsuit is enforceable against ISS; (4) the entry of judgment against ISS in the sum of $381,396,000.00, plus interest and costs; and (5) certain injunctive relief. *See id.*, ¶ 33.

On August 4, 2009, Semtek filed a motion seeking authorization from this Court to serve its complaint on ISS by mail through the clerk's office. *See* Motion for Service Pursuant to 28 U.S.C. § 1608(b)(3)(B) (Dkt. No. 4).  In requesting such authorization, Semtek represented to this Court that: (1) ISS has not authorized an agent to receive service of process in the United States; (2) the Russian Federation refuses to permit service of documents under the Hague Convention; and (3) service by mail is consistent with the law of the Russian Federation. *See id.*, at pp. 2-3.  After this Court granted Semtek's motion for substituted service, Semtek alleges that copies of the summons and complaint were delivered to addresses for ISS in Moscow and Zheleznogorsk, Russia on August 21 and 26, 2009, respectively. *See* Affidavit of Service (Dkt. No. 6), ¶¶ 2, 5.

On October 28, 2009, Semtek filed an amended complaint seeking the same relief as its original complaint, but modifying substantially its jurisdictional allegations. *See* Am. Compl. (Dkt. No. 7).  Specifically, Semtek's amended complaint admits that ISS is presumptively immune from suit under the FSIA, but alleges that two statutory exceptions to that immunity apply in this case.  First, Semtek alleges that its claims are exempt from FSIA immunity because ISS conducts commercial activity in this country through: (1) its acquisition of predecessors-in-

interest and alter egos who themselves conducted commercial activities in the United States; and (2) its own "contract[s] with U.S. companies for satellite components and repeated[] and continuous[] [use of] United States financial institutions for essential services and payment in connection with its worldwide satellite business." *See id.*, ¶ 8.  Second, Semtek alleges that ISS implicitly and expressly has waived its FSIA immunity by "acquiring the liabilities and obligations of its predecessors-in-interest and alter egos described herein which were subject to the judgment and is also bound by their failure to raise any immunity defense." *See id.*, ¶ 7.

On November 12, 2009, Semtek filed a motion seeking authorization from this Court to serve its amended complaint on ISS by mail through the clerk's office.  *See* Motion for Service Pursuant to 28 U.S.C. § 1608(b)(3)(B) (Dkt. No. 8).  As a basis for this motion, Semtek relied explicitly on the representations made to this Court in its first motion for substituted service.  *See id.*, at p. 2.  After this Court granted Semtek's second motion for substituted service, Semtek alleges that copies of the summons and amended complaint were delivered to addresses for ISS in Moscow and Zheleznogorsk, Russia on December 10 and 15, 2009, respectively.  *See* Affidavit of Service (Dkt. No. 10), ¶¶ 2, 7.

**Default Judgment Enters Against ISS**

On July 27, 2010, this Court issued a notice of default against ISS based on a failure to plead or otherwise defend.  *See* Notice of Default (Dkt. No. 13).  Semtek subsequently filed a motion for default judgment on August 26, 2010.  *See* Motion for Default Judgment (Dkt. No. 16).  In support of this motion, Semtek filed a memorandum of law arguing that ISS is liable for the default judgment entered in the Merkuriy lawsuit because ISS is the alter ego or successor of Merkuriy.  *See generally* Plaintiff's Memorandum of Law in Support of Motion for Default Judgment ("Pl.'s Memo") (Dkt. No. 17).  Specifically, Semtek contended that it is entitled to a default judgment because: (1) ISS is an alter ego of Merkuriy based on the twelve-factor test set

6

forth by the Massachusetts Supreme Judicial Court in cases such as *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614 (1969); and (2) ISS is a legal successor to the liabilities of Merkuriy based on the test for successor liability set forth by the Massachusetts Supreme Judicial Court in cases such as *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547 (2008).

Semtek filed a proposed form of default judgment for this Court's consideration on January 21, 2011.  *See* Default Judgment (Proposed Order) (Dkt. No. 25).  On February 1, 2011, this Court entered a default judgment in substantially the form proposed by Semtek: (1) ordering ISS to pay the sum of $381,396,000.00 with interest thereon from July 1, 1995; and (2) enjoining ISS from "engaging in any act thwarting the purpose of the agency agreement alleged in the complaint including entering into or carrying out any agreement with Transworld Communications Ltd. or Lockheed Martin Corporation as successor by merger to Martin Marietta Corporation which would have the effect of thwarting said agency agreement."  *See* Default Judgment (Dkt. No. 26).  As part of its findings in support of the default judgment, this Court applied Massachusetts law to the issues of alter ego and successor corporate liability and concluded "that Semtek has established by satisfactory evidence that imposition of successor liability against ISS is appropriate and therefore ISS is liable to Semtek for the judgment entered against Merkuriy in [the Merkuriy lawsuit]."  *Id.*, ¶ 12.

### Corporate Backgrounds of NPO PM, Merkuriy and ISS

**NPO PM**.  From 1959 until 2008, NPO PM was an enterprise wholly-owned by the Russian state (first, the Soviet Union and later, the Russian Federation).  Sivirin Aff., ¶ 5.  During this time, NPO PM employed as many as 12,000 individuals engaged in the business of developing and manufacturing a broad range of satellites and satellite systems.  *Id.*

**Merkuriy**.  On September 4, 1991, Merkuriy was founded as a Russian limited liability company.  *Id.*, ¶ 6.  At all relevant times during its corporate life, Merkuriy employed

approximately 12 to 16 individuals engaged in the design and development of ground communications, including ground stations for satellite communications.  *Id.*

Upon the founding of Merkuriy, NPO PM owned approximately 13.95% of the outstanding participatory shares of the company.  *Id.*, ¶ 7.  On or around July 1, 1992, however, a presidential edict forbade national enterprises such as NPO PM from investing in trade companies and NPO PM was required to divest itself of its shares in Merkuriy.  *Id.*, ¶ 8.  As a result, a united trade union known as Trade Union No. 290 acquired NPO PM's former shares in Merkuriy.  *Id.*, ¶ 9.  Along with Trade Union No. 290's 13.95% interest, the other major shareholders in Merkuriy were a financial investment company known as Fenix-S (approximately 11.63% of outstanding shares), and numerous other individual shareholders including A.P. Pastarnak (approximately 9.30% of outstanding shares), Sivirin (9.02% of outstanding shares), and N.V. Vasilenko (6.98% of outstanding shares).[2]  *Id.*  At no time did NPO PM execute any agreements on behalf of Merkuriy.  *Id.*, ¶ 7.

On or around January 29, 1999, Merkuriy was reorganized into a limited liability company known as "Merkuriy Telestat" with the same shareholders as Merkuriy.  *Id.*, ¶ 10.  In August 2002, pursuant to the terms of an owners' shares sale contract, *all* of the shares of Merkuriy Telestat were sold to NEKST Ltd. ("NEKST").  *Id.*  Merkuriy Telestat was liquidated and excluded from the register of the Companies of the Russian Federation on June 7, 2008.  *Id.*  At the time of the sale of Merkuriy Telestat to NEKST, NPO PM had not owned any interest in Merkuriy for over ten years.  *See id.*, ¶¶ 8, 10.  No assets or operations of Merkuriy were transferred or absorbed by NPO PM.  *Id.*, ¶ 10.

---

[2] The percentage of outstanding Merkuriy shares owned by the other individual shareholders ranged from approximately 2.33% to 4.65%.  *See* Sivirin Aff., ¶ 9.

**ISS.**  On March 3, 2008, NPO PM was reformed under Russian Federation law into the joint stock company ISS.  *Id.*, ¶ 11.  As described above, ISS is wholly-owned by an agency of the Russian Federation and employs over 6,350 individuals specializing in the design, development and manufacture of high performance spacecraft and satellite systems.  *Id.*, ¶ 3. After the transformation from NPO PM to ISS, Sivirin continued to be employed by ISS as a department head for the development of space systems.  *See id.*, ¶¶ 1-2.

## The Loutch Satellites

In the late 1980's and 1990's, the Russian government developed a series of state-owned satellites known as "Loutch" satellites that were intended to facilitate communications with the Soviet/Russian space vehicles Buran, Soyuz and Progress and serve a number of defense purposes.  *Id.*, ¶ 12.  In all, the Russian government manufactured four Loutch satellites with an expected lifetime of three years each.  *Id.*  Three of these satellites were involved in the Merkuriy lawsuit.  The first, known as the "Loutch-1" satellite, was launched into orbit on December 27, 1989, and continued in operation until August 15, 1997.  *Id.*, ¶ 13.  The second, known as the Loutch satellite No. 11, failed at launch and was burned at the Baikonur launch site.  *Id.*  The third, known as the Loutch satellite No. 12, was launched into orbit on October 10, 1995 and continued in operation until September 1, 1997.  *Id.*  The Loutch satellites No. 11 and 12 are sometimes referred to collectively as the "Loutch-2" satellites.  *Id.*

In April 1993, the Russian Ministry of Defense and Russian Space Agency issued a decision granting Merkuriy the non-transferrable right to access the orbiting Loutch-1 satellite and proposed Loutch satellites No. 11 and 12 on a secondary basis for commercial purposes.[3] *Id.*, ¶ 14.  Although NPO PM was a manufacturer of these satellites, it was never granted a right

---

[3] Primary use of the Loutch-1, Loutch No. 11 and Loutch No. 12 satellites was always reserved for official state use by the Russian Federation.  Sivirin Aff., ¶ 14.

to use them commercially. *Id.* In addition, at the time the Russian government granted Merkuriy the right to utilize the Loutch satellites for commercial purposes, NPO PM was no longer a shareholder of Merkuriy as it had disposed of its interest in the company one year earlier. *See id.*, ¶¶ 8, 14.

In the latter part of 1992, Semtek's President, Edward K. Shapiro ("Shapiro"), was introduced to Sivirin, who was at that time Merkuriy's Executive Director. *Id.*, ¶ 15. Although Sivirin had been employed previously by NPO PM, and would return to the company later, Sivirin was employed solely as Merkuriy's Executive Director at all times relevant to his discussions with Shapiro. *See id.*, ¶¶ 1-2, 15. During their introduction, Shapiro informed Sivirin that he had established a small company for the purpose of engaging in business with Russian Federation private enterprises, and subsequently urged Sivirin to meet with him in Moscow to explore potential business relationships between Semtek and Merkuriy. *Id.*, ¶ 15.

In late October 1992, Shapiro traveled to Moscow to meet with Sivirin for the purpose of discussing a potential joint venture between Semtek and Merkuriy in the fields of satellite communications and the export of Siberian timber. *Id.*, ¶ 16. At the conclusion of this meeting, Shapiro and Sivirin agreed to meet again within two months to consider the prospect of a joint venture, and executed a one-half page "Business Agreement" that was "valid during the three months from the date of signing unless it will be replaced by a different, more detailed document." *See id.*, ¶ 16; Business Agreement (Dkt. No. 19-4).

In mid-December 1992, Shapiro and Sivirin conducted a series of meetings in Moscow that were summarized in a 7-page "Protocol" signed on December 18, 1992 to spell out the principal features of any future joint venture that might be formed by Semtek and Merkuriy. *See* Protocol (Dkt. No. 19-5). As contemplated in the Protocol, Merkuriy's contribution to the

10

proposed joint venture would have been to provide capacity on the existing Loutch-1 satellite and Semtek's contribution would have consisted of providing financing and marketing for the venture. *See id.* The Protocol signed by the parties stated explicitly that the parties "agreed to conclude the final joint venture agreement after a business plan of the joint venture has been approved" and "agree to proceed towards a final written agreement that will encompass all of the above understanding and any others that may be decided between them." *See id.*, at pp. 2, 6.

In the latter part of April 1993, Shapiro and Sivirin met in Montreal, Canada to discuss further the proposed joint venture. Sivirin Aff., ¶ 19. The results of this meeting were summarized in a May 2, 1993 Letter of Intent which described the proposed joint venture as designed to market, sell and lease communication services on a Loutch satellite scheduled to be launched in 1993. *See* Letter of Intent (Dkt. No. 19-7). The Letter of Intent further specified that "[i]t is the intent of both MERKURIY and SEMTEK that a Joint Venture Agreement will be negotiated in good faith and signed by both parties on or before May 31, 1993." *See id.*, at p. 3.

The final Joint Venture Agreement contemplated by the Letter of Intent was not signed prior to May 31, 1993, or at any time thereafter.[4] *See* Sivirin Aff., ¶ 20. As no binding agreement to form a joint venture ever came into effect, Semtek never provided the financial support addressed at the letter of intent phase. *Id.* Subsequently, Merkuriy opted to pursue other business opportunities and entered into contracts with Transworld Communications, Inc. ("Transworld") to modify the two proposed Loutch-2 satellites. *Id.* Ultimately, the Lotuch satellite no. 12 was launched into orbit on or around October 10, 1995 but failed on September 1, 1997. *Id.*, ¶ 13. Since that time, there have been no Loutch-category satellites launched into

---

[4] There is a discrepancy between the deadline stated in the Russian version of the Letter of Intent and the translated version filed by Semtek as Dkt. No. 19-7. Specifically, the Russian version sets this deadline as July 4, 1993, whereas the translated version sets forth a May 31, 1993 deadline. *Compare* Sivirin Aff., ¶ 19 *with* Letter of Intent (Dkt. No. 19-7). This discrepancy, however, is irrelevant for purposes of this motion because it is undisputed that the final Joint Venture Agreement was not signed prior to either deadline.

orbit by the Russian Federation.  *Id.*, ¶ 21,  Manufacturing work on the latest generation of

Loutch satellites – the Loutch-5A and 5B satellites, which are designed for governmental

purposes – did not resume until 2006 in accordance with the Russian Federal Space Program for

the years 2006-2015.  *Id.*  At this time, there are no commercial applications planned for the

Loutch 5A and 5B satellites.  *Id.*

## The Merkuriy Lawsuit

Semtek filed the Merkuriy lawsuit on August 15, 1995, alleging claims for fraud,

violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, breach of

contract, breach of fiduciary duty, and breach of agency agreement.  In pertinent part, Semtek's

central allegation in the Merkuriy lawsuit was that Merkuriy disregarded the purported joint

venture between Semtek and Merkuriy in favor of its contractual arrangement with Transworld

to commercialize the Loutch-2 satellites.  *See* Complaint, Appendix of Filings and Orders from

*Semtek International Incorporated v. Merkuriy Ltd., et. al.*, Civil Action No. 95-cv-11820-RCL

(D. Mass.) ("Merkuriy App.") (Dkt. No. 1), ¶¶ 9-70.[5]

As described above, this Court (Lindsay, J.) entered a default judgment in the amount of

$381,396,000.00 and injunction against Merkuriy and Sivirin on April 12, 2000 based on their

failure to produce documents and present themselves for deposition and a status conference.  *See*

Judgment, Merkuriy App. (Dkt. No. 112).  The default judgment in the Merkuriy lawsuit did not

address or adjudicate the merits of Semtek's underlying claims.  *See id.*  In support of its claim

for damages, Semtek filed a 3-page affidavit with this Court on April 11, 1996 calculating the

present value of the joint venture profits lost by Semtek as $127,132,000.00.  *See* Affidavit of

---

[5] For this Court's convenience and ease of reference, ISS has created the Merkuriy App. (attached as Exhibit A to ISS's motion to vacate default judgment) in order to aggregate the relevant filings and orders from the Merkuriy lawsuit that are cited in support of ISS's motion.  The filings and orders contained in the Merkuriy App. were obtained by ISS's counsel through a request to the National Records and Archives Administration.

Arthur M. Lustgarten in support of Plaintiff's Motion for Default Judgment, Merkuriy App. (Dkt. No. 6). In arriving at the $381,396,000.00 damages figure in the default judgment, this Court accepted Semtek's calculation of lost profits and further granted Semtek's request to treble those actual damages pursuant to the RICO Act. *See* Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, Merkuriy App. (Dkt. No. 7); Judgment, Merkuriy App. (Dkt. No. 8) (trebling actual damages of $127,132,000.00 to $381,396,000.00 pursuant to 18 U.S.C. § 1946(c)).

<u>ARGUMENT</u>

"Once a default judgment has been entered, relief must be sought under Federal Rule of Civil Procedure 60(b)." *Tuckerbrook Alternative Invest., LP v. Banerjee*, Civil Action No. 09-11672-WGY, 2010 WL 4867608, at *2 (D. Mass. November 30, 2010). *See also* Fed. R. Civ. P. 55(c) (court may "set aside default judgment under Rule 60(b)"). While a Rule 60(b) motion ultimately falls within the discretion of this Court to grant or deny, "the remedial nature of the rule tends towards the exercise of such discretion" because "legal policy prefers case resolution on the merits" and "there is greater cause for liberality in reopening a case that has never been considered on the merits." *See id.*

Rule 60(b) authorizes this Court to vacate default judgments that are void for lack of subject matter or personal jurisdiction, *see* Fed. R. Civ. P. 60(b)(4), default judgments that were procured by misrepresentation in the defendant's absence, *see* Fed. R. Civ. P. 60(b)(3), and for "any other reason that justifies relief," *see* Fed. R. Civ. P. 60(b)(6). This Court should utilize its broad discretion to vacate the default judgment entered in this case because ISS is immune from suit under the FSIA, the default judgment was procured through Semtek's factual misrepresentations, the monetary and injunctive components of the default judgment are

13

speculative and overbroad, and ISS possesses numerous potentially meritorious defenses that it will pursue vigorously if the default judgment is vacated.

I.      **The Default Judgment Is Void and This Lawsuit Must Be Dismissed Because ISS is Immune From Suit Under the FSIA**

A default judgment that is void for lack of jurisdiction over the defendant is a legal nullity that *must* be vacated by this Court pursuant to Fed. R. Civ. P. 60(b)(4). *Sea-Land Serv., Inc. v. Ceramica Europa II, Inc.*, 160 F.3d 849, 852 (1st Cir. 1998) ("[T]he First Circuit has held that the district court does not have discretion to deny a Rule 60(b)(4) motion if the challenged judgment was void for lack of personal jurisdiction."); *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 28 (1st Cir. 1998) ("If the judgment is void, the district court has no discretion but to set aside the entry of default judgment.").  Moreover, a Rule 60(b)(4) challenge to a void judgment can be asserted at any time, and "cannot be denied on the procedural ground that [it was] not brought within a 'reasonable time' as required under Rule 60(b)."  *See Sea-Land Serv., 160 F.3d at 852.  See also Precision Etchings & Findings, Inc. v. LGP Gem Ltd.*, 953 F.2d 21, 23 (1st Cir. 1992) ("It is well-established that "[a] default judgment entered by a court which lacks jurisdiction over the person of the defendant is void . . . and may be set aside *at any time* pursuant to Fed. R. Civ. P. 60(b)(4).") (emphasis in original).  Here, this Court must vacate the default judgment as void because ISS is immune from suit under the FSIA and, consequently, this Court lacks both subject matter and personal jurisdiction.  For the same reason, this Court should dismiss Semtek's claims against ISS *sua sponte* without waiting for ISS to file a responsive pleading.  *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010) ("A court has a duty to assure itself of its own jurisdiction, regardless of whether jurisdiction is contested by the parties . . . Therefore, 'even if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is

14

unavailable.'") (quoting from *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494 n.20

(1983)); *Fagot Rodriguez v. Republic of Costa Rica*, 139 F. Supp. 2d 173, 180 (D.P.R. 2001)

("Since foreign immunity is a matter of jurisdiction, this Court may raise it or re-examine it at

any time.").

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in a court

of the United States." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  *See also Practical*

*Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 355-56 (D.C. Cir. 1987) ("Sovereign

immunity under the FSIA is thus a gateway issue, not simply a plea in defense to a claim: if the

foreign state is entitled to immunity with respect to the claim asserted, then the district court

lacks both subject matter and personal jurisdiction, and must dismiss the case.").  Foreign states,

their agencies, and their instrumentalities are all "presumptively immune from the jurisdiction of

United States courts" under the FSIA unless a specifically-enumerated exception to immunity

applies.  *See Saudi Arabia*, 507 U.S. at 355.  *See also* 28 U.S.C. § 1603(a)-(b) (term "foreign

state" includes "an agency or instrumentality of a foreign state").  "The 'interlocking provisions'

of [the FSIA] . . . compress subject-matter jurisdiction and personal jurisdiction into a single,

two-pronged inquiry: (1) whether service of the foreign state was accomplished properly; and (2)

whether one of the statutory exceptions to sovereign immunity applies." *Abur v. Republic of*

*Sudan*, 437 F. Supp. 2d 166, 172 (D.D.C. 2006).  *See also Seetransport Wiking Trader*

*Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 579 (2d Cir.

1993) ("Therefore, the FSIA 'makes the statutory aspect of personal jurisdiction simple: subject

matter jurisdiction plus service of process equals personal jurisdiction.'") (internal citations

omitted).

Here, Semtek *admits* that ISS is an agency or instrumentality of the Russian Federation. *See, e.g.,* Am. Compl. (Dkt. No. 1), ¶¶ 3-4. *See also* Sivirin Aff., ¶ 3. Thus, ISS has established a *prima facie* case for presumptive immunity under the FSIA, and in order to vest this Court with jurisdiction over ISS it is therefore incumbent upon Semtek to come forward with evidence that: (1) a FSIA exception applies; *and* (2) ISS was properly served with process. *See, e.g., Morgan Equip. Co. v. Novokrivorogsky State Ore Mining and Processing Enerprise*, 57 F. Supp. 2d 863, 869 (N.D. Cal. 1998) (once a *prima facie* case of FSIA immunity is shown, "the burden shifts to the plaintiff to offer evidence that an exception to the FSIA applies.") Semtek has failed to meet its burden on both fronts.

A.   Semtek Cannot Demonstrate That Any FSIA Exception Overrides ISS's Presumption of Immunity

Semtek amended its complaint in this lawsuit for the express purpose of alleging that two FSIA exceptions – the commercial activity exception and waiver exception – override ISS's presumptive immunity. *See* Am. Compl. (Dkt. No. 7), ¶¶ 7-8. Yet Semtek did not request findings from this Court in its proposed default judgment that the commercial activity or waiver exceptions apply to ISS. *See* Default Judgment (Proposed Order) (Dkt. No. 25). Nor does the default judgment itself make the findings necessary to override ISS's presumption of immunity as an undisputed agency or instrumentality of the Russian Federation. *See* Default Judgment (Dkt. No. 26). For this reason alone, the default judgment is void on its face and must be vacated. *See, e.g., Youming Jin v. Ministry of State Security*, 475 F. Supp. 2d 54, 59 n.5 (D.D.C. 2007) ("The district court has a unique obligation in [FSIA] cases to determine its jurisdiction over the foreign sovereign . . . Even if the foreign state does not enter an appearance to assert an immunity defense, a district court still must determine whether immunity is unavailable under FSIA.") Assuming, *arguendo*, that the lack of findings in the default judgment is not fatal,

Semtek still cannot establish that either the commercial activity or waiver exceptions apply to this case.

1.      The FSIA Commercial Activity Exception Does Not Apply to ISS

Pursuant to 28 U.S.C. § 1605(a)(2), an agency or instrumentality of a foreign state will not be immune from lawsuits in the United States arising from "commercial activities" that have a sufficient jurisdictional nexus to the United States.  The FSIA provides for three means of establishing that nexus – demonstrating the existence of: (1) a commercial activity "actively carried on in the United States by the foreign state;" (2) an "act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere [that] causes a direct effect in the United States."  *See* 28 U.S.C. § 1605(a)(2).

Importantly, however, even where the commercial activity has a jurisdictional nexus to the United States, a plaintiff's cause of action must be *based upon* that activity in order for the exception to apply.  In other words, even if a defendant carries on some commercial activity in the United States, the commercial activity exception will not apply unless the plaintiff's cause of action arises from that specific activity.  *See, e.g., NYSA-ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 38 (2d Cir. 1993) ("In construing the commercial activity exception, courts have required that a significant nexus exist between the commercial activity . . . and a plaintiff's cause of action."); *Stena Rederi AB v. Comision de Contratos del Comite Ejecutive General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C.*, 923 F.2d 380, 387 (5th Cir. 1991) ("Isolated or unrelated commercial actions of a foreign sovereign in the United States are insufficient to support a commercial activities exemption to sovereign immunity."); *Sanchez v. Banco Central De Nicaragua*, 770 F.2d 1385, 1391 (5th Cir. 1985) ("The focus of the [commercial activity] exception to immunity . . . is not on whether the

defendant generally engages in a commercial enterprise or activity . . . rather, it is on whether the particular conduct giving rise to the claim in question constitutes or is in connection with commercial activity . . . .")

ISS has not carried on any commercial activity that is sufficient to trigger the FSIA exception under any of these three prongs.  Indeed, ISS does not own any assets in the United States.  *See* Sivirin Aff., ¶ 4.  Moreover, its only business connections to this country are four contracts related to the purchase of parts from American companies and the right to utilize a Proton launcher.  *See id.*  None of these contracts have any connection whatsoever to Semtek, Massachusetts or the Loutch-1, Loutch No. 11 or Loutch No. 12 satellites.  The commercial activity exception is therefore inapplicable because ISS's current contacts with America have no nexus, let alone a sufficient one, to the claims in this lawsuit regarding a putative joint venture from the early 1990's and/or ISS's alleged assumption of the liabilities of a Russian company that was liquidated in 2008.[6]

Nor does ISS's *alleged* assumption of Merkuriy's liabilities create such a nexus.  In its Amended Complaint, Semtek contends that the commercial activity exception applies to ISS because it has acquired the liabilities of a company – Merkuriy – that purportedly conducted commercial activities in the United States during the 1990's through its joint venture negotiations with Semtek.  *See* Am. Compl. (Dkt. No. 7), ¶ 8.  Assuming, *arguendo*, that the activities of

---

[6] For these same reasons, this Court would also lack jurisdiction over ISS even if the traditional due process minimum contacts test for personal jurisdiction is applicable.  *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 70 (D.D.C. 2010) ("The Due Process Clause of the Fifth Amendment to the U.S. Constitution mandates that 'no person shall . . . be deprived of life, liberty, or property, without due process of law.'  In civil cases against persons, then, the Due Process Clause 'requires that if the defendant be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'")  *But see TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 302 (D.C. Cir. 2005) (holding that due process clause did not apply to agency or instrumentality of Ukraine because they are "not a 'person' for purposes of the due process clause and cannot invoke the minimum contacts test to avoid the personal jurisdiction of the district court."); *Valore*, 700 F. Supp. 2d at 71 ("Moreover, because states of the United States are not persons entitled to the Fifth Amendment Due Process protections . . . 'absent some compelling reason to treat foreign sovereigns more favorable that 'States of the Union,' it would make no sense to view foreign states as 'persons' under the Due Process Clause . . . .")

Merkuiry can be imputed to ISS – which ISS denies explicitly, *see* Sections II.A & II.B, *infra* – Merkuriy did not engage in any commercial activity that would trigger application of the commercial activity exception.

With regard to the first two prongs of the commercial activity exception, Semtek cannot establish that Merkuriy conducted *any* activity in the United States in connection with the proposed Semtek joint venture.  Indeed, none of the meetings between Semtek and Merkuriy to discuss the putative joint venture took place in the United States.  Rather, they were conducted exclusively in Moscow or Montreal.  *See* Sivirin Aff., ¶¶16-17, 19.  Similarly, the Business Agreement, Protocol, and Letter of Intent relied upon by Semtek as evidence of the joint venture were all negotiated and executed outside the United States.  *See* Business Agreement (Dkt. No. 19-4); Protocol (Dkt. No. 19-5); Letter of Intent (Dkt. No. 19-7).

Finally, the subjects of the proposed joint venture had little connection to the United States because the joint venture contemplated by the parties would have attempted to commercialize existing or proposed Russian satellites and/or export timber from Siberia.  *See* Business Agreement (Dkt. No. 19-4); Protocol (Dkt. No. 19-5); Letter of Intent (Dkt. No. 19-7).  In these circumstances, Merkuriy's negotiations abroad of a potential of a joint venture with Semtek lack a sufficient nexus to the United States and should not serve to trigger application of the commercial activity exception.  *See Morgan Equip. Co.*, 57 F. Supp. 2d at 872 (vacating default judgment on basis of FSIA immunity) (defendant did not conduct commercial activities in United States with sufficient nexus to plaintiff's contract-based claims where "some negotiations and the formal signing [of a contract] took place in San Francisco [but] the core of negotiations took place abroad . . . .").  *See also Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988) (plaintiff's breach of contract claim not "based upon" recruiting call

that eventually led to contract, as call was merely precursor to commercial transaction) (noting that "based upon" requirement of commercial activity exception is "stricter than . . . a minimum contacts due process inquiry.")

With regard to the third prong of the commercial activity exception, Semtek cannot establish that Merkuriy's activities abroad had a "direct effect" on Semtek here in the United States. An effect is "direct" for purposes of the commercial activity exception if it follows as an "immediate consequence" of the defendant's activity. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992). *See also id.* (jurisdiction under the FSIA may not be "predicated on purely trivial effects in the United States"). Here, Semtek can make absolutely no showing that it suffered a direct effect as an immediate consequence of Merkuriy's activities in the Russian Federation.

In the first instance, as will be described in Section II.C, *infra*, the negotiations between Semtek and Merkuriy never ripened into a binding joint venture agreement under the law of the Russian Federation. There was therefore no legally recognizable relationship between the parties, and any adverse effects suffered by Semtek were a direct and immediate consequence of its own unjustified reliance on non-binding contract negotiations. Moreover, as described above, all meetings between the parties occurred outside the United States, all relevant documents were executed by the parties outside the United States, and the subject matter of the proposed joint venture was a satellite system based outside the United States. Accordingly, even if Semtek suffered some tangential financial harm when the proposed joint venture did not come to fruition, that harm was not enough to constitute a direct effect because "the fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to trigger the [commercial activity] exception." *Antares Aircraft, L.P. v. Federal Republic of*

*Nigeria*, 999 F.2d 33, 35 (2d Cir. 1993).  *Accord United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232, 1238-39 (10th Cir. 1994) (case properly dismissed under FSIA immunity because financial loss by U.S. company insufficient to prove commercial activity by defendant in U.S.); *Zernicek v. Brown & Root, Inc.*, 826 F.2d 415, 418 (5th Cir. 1987) ("[C]onsequential damages [from personal injury tort abroad] are insufficient to constitute a 'direct effect in the United States' for purposes of abrogating sovereign immunity.") (internal citations omitted); *Colonial Bank v. Compagnie Generale Maritime et Financiere*, 645 F. Supp. 1457, 1465 (S.D.N.Y. 1986) (holding that financial loss by American bank arising from ship seizure to be indirect effect).  Accordingly, Semtek has failed to meet its burden of proving that the commercial activity exception overrides ISS's presumptive FSIA immunity in this case.

### 2.    The FSIA Waiver Exception Does Not Apply

The waiver exception to FSIA immunity applies only when the agency or instrumentality of a foreign state "has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect, except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1).  Although Semtek alleges that ISS has "expressly" waived its FSIA immunity in this case, *see* Am. Compl. (Dkt. No. 7), ¶ 7, it has provided no support for that contention.  Nor could it.  At no point in time has ISS ever indicated to Semtek or anyone else that it would waive voluntarily its FSIA immunity for purposes of this lawsuit.

Semtek's argument regarding implied waiver likewise is deficient.  "Courts have narrowly construed the waiver exception under the FSIA." *Raccoon Recovery, LLC v. Navoi Mining and Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1139 (D. Colo. 2002) (internal citations omitted).  Here, Semtek alleges that ISS waived its FSIA immunity impliedly "by acquiring the liabilities and obligations of its predecessors-in-interest and alter egos . . . which

21

were subject to the [Merkuriy] judgment and is also bound by their failure to raise any immunity defense." *See* Am. Compl. (Dkt. No. 7), ¶ 7.  These sparse allegations fall far short of establishing implied waiver.

First, assuming that the activities of Merkuiry can be imputed to ISS – which ISS denies, *see* Sections II.A & II.B, *infra* – Merkuriy could not have waived any immunity defense under the FSIA because it was not an agency or instrumentality of a foreign state.  For purposes of the FSIA, an agency or instrumentality of a foreign state is entitled to immunity only if a majority of its shares are owned directly by a foreign state or political subdivision thereof.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (citing to 28 U.S.C. § 1603(b)(2)).  Here, at the time that Semtek was introduced to Merkuriy in late 1992, Merkuriy was not owned *in any part* by the Russian Federation or any of its political subdivisions because NPO PM had been required to divest itself of its 13.95% ownership share in Merkuriy by virtue of the July 1, 1992 presidential edict forbidding national enterprises from trade company investment, and, in any event, NPO PM never owned the majority of the shares of Merkuriy.  *See* Sivirin Aff., ¶¶ 7-8.  Accordingly, Merkuriy was not an agency or instrumentality of the Russian Federation during its discussions with Semtek regarding their proposed joint venture or at the time the Merkuriy lawsuit was filed in 1995.  Because Merkuriy could not possibly have waived a defense that it did not possess, Semtek cannot establish that any such waiver should be imputed to ISS.

Second, Semtek cannot establish an implied waiver simply by virtue of its allegation – which ISS disputes – that ISS acquired Merkuriy's liabilities and obligations.  "[A] request to extend . . . a waiver to third parties . . . should be rejected 'absent strong evidence of the sovereign's intent.'"  *Raccoon Recovery, LLC*, 244 F. Supp. 2d at 1139.  Here, Semtek has adduced *no* evidence of what ISS's intent might have been with regard to a potential waiver of

FSIA immunity when it allegedly acquired Merkuriy's liabilities.  Semtek instead maintains that

the acquisition of those liabilities itself was enough to waive immunity.  Reliance on this bare

allegation of alter ego or successor liability is not enough to trigger application of the waiver

exception.  *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313 (11th Cir. 2009) (allegation that

parties were "alter-egos" was "insufficient to divest appellants of their sovereign immunity"

because "it does not bring the claim within one of [] the statutorily-enumerated exceptions either

to pre-judgment or post-judgment immunity under the FSIA.")  Accordingly, Semtek has failed

to meet its burden of proving that the waiver exception overrides ISS's presumptive FSIA

immunity in this case.

B.    <u>ISS Was Not Served With Process Properly</u>

The FSIA sets forth a three-tiered scheme pursuant to which agencies or instrumentalities

of foreign states must be served.  *See* 28 U.S.C. § 1608(b).  *See also Magness v. Russian*

*Federation*, 247 F.3d 609, 613 (5th Cir. 2001) ("The provisions for service under section 1608

[of the FSIA] are hierarchical, such that a plaintiff must attempt the methods of service in the

order they are laid out in the statute.")  ISS does not dispute that the first two of these tiers –

requiring first that plaintiffs attempt service pursuant to any "special arrangement" between the

parties, and, second, that plaintiffs attempt service on an agent authorized to accept service in the

United States or pursuant to any applicable international convention, *see* 28 U.S.C. §§

1608(b)(1)-(2) – are unavailable to Semtek in the circumstances of this case.

The third tier of the FSIA's service scheme provides that service may be made upon an

agency or instrumentality of a foreign state:

> ... [I]f reasonably calculated to give actual notice, by delivery of a copy of the summons
> and complaint, together with a translation of each into the official language of the foreign
> state -

23

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b)(3).  In this case, Semtek appears to contend that its service on ISS was authorized pursuant to a hybrid approach under this third tier whereby the amended complaint and summons were served on ISS by registered mail in accordance with an order of this Court. *See* Motion for Service Pursuant to 28 U.S.C. § 1608(B)(3)(B) (Dkt. No. 4), at p. 3 ("Congress has authorized service on an instrumentaility of a foreign state pursuant to 28 U.S.C. §§ 1608(b)(3)(B) *and/or* 28 U.S.C. §§ 1608(b)(3)(C).") (emphasis supplied).

Semtek's reliance on these provisions is misplaced.  Although § 1608(b)(3)(C) authorizes service "as directed by an order of the court," the method of service must be "consistent with the law of the place where service is to be made."  Here, the method of service attempted by Semtek – registered mail – is *not* consistent with the law of the Russian Federation.  Indeed, the Russian Federation has explicitly objected to Article 10(a) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), which permits service of judicial documents by registered mail.  *See Kuklachev v. Gelfman*, No. 08-CV-2214, 2008 WL 5068860, at *2 n.2 & 4 (E.D.N.Y. 2008) (refusing to authorize plaintiffs to serve Russian defendants by mail pursuant to Fed. R. Civ. P. 4(e) because "Russia has objected to Article 10 of the Hague Convention, which permits service by mail ...").

Even if service by mail were permissible under the law of the Russian Federation, the manner of service employed by Semtek here did not satisfy the requirements of the FSIA.  First, Semtek concedes that its counsel, Kriendler & Kriendler LLP, mailed the package containing the

amended complaint and summons.  *See* Affidavit of Service, ¶ 5 (Dkt. No. 10).  Accordingly, these documents were not "addressed and dispatched by the *clerk of court*" as required by 28 U.S.C. § 1608(b)(3)(B) (emphasis supplied).  Second, Semtek has not established that its attempted service was "reasonably calculated to give actual notice."  *See* 28 U.S.C. § 1608(b)(3). In fact, Semtek's attempt at service does not even comply with what Semtek itself considers to be the Russian Federation's service requirements.  In its motion for substituted service, Semtek cites to a internet web page published by the Hague Conference on Private International law for the proposition that service can only be effectuated on entities in the Russian Federation if "[a] writ of summons addressed to an entity is served on a *respective official* who should *sign the summons stub* to confirm the receipt of the writ of summons."  *See* Motion for Service Pursuant to 28 U.S.C. § 1608(B)(3)(B) (Dkt. No. 4), pp. 3-4 & Ex. C (emphasis supplied).  But Semtek has provided this Court with absolutely no evidence to demonstrate either that its amended complaint was served on an *official* of ISS, or that any such official *signed the summons stub*. *See* Affidavit of Service (Dkt. No. 10).  From all that appears in the record, a package containing a copy of the amended complaint and summons was delivered to 3 Mytischinskaya Ulitsa Building 16 in Moscow, Russia on December 10, 2009, and the package was signed for by an unidentified individual.  *See id.*, at Ex. B.[7]  Absent evidence regarding the identity of the person signing for this package, or any indication that the summons itself also was signed, Semtek's attempt at service was not reasonably calculated to give ISS actual notice, and therefore failed to effectuate proper service under the FSIA.  Accordingly, the default judgment entered in this case is void because of Semtek's failure to effectuate service properly.

---

[7] Although Semtek's Affidavit of Service also alleges that a similar package was sent to Zheleznogorsk, Russia, there is absolutely no evidence in the record to demonstrate that any such package was signed for.  *See* Affidavit of Service (Dkt. No. 10), ¶ 7 & Ex. B.  *See also* 28 U.S.C. § 1608(b)(3)(B) (service by mail under third tier of FSIA requires a "form of mail requiring a signed receipt").

II.     **The Default Judgment Must Be Vacated Because Semtek Procured It Through Misrepresentations To This Court**

Pursuant to Fed. R. Civ. P. 60(b)(3), this Court may vacate the default judgment entered against ISS if it concludes that the judgment was procured by "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."[8]  Rule 60(b)(3) is "designed to afford protection against judgments that are unfairly obtained" and can be invoked where: (1) "the movant [can] demonstrate misconduct – such as fraud or misrepresentation – by clear and convincing evidence"; and (2) "the misconduct foreclosed full and fair preparation or presentation of [the movant's] case."  *See Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 20-21 (1st Cir. 2002).  *See also Nederlandsche Handel-Maatschappij, N.V. v. Jay Emm, Inc.*, 301 F.2d 114, 115 (2d Cir. 1962) (applying Rule 60(b)(3) analysis to default judgment); *Canales v. A.H.R.E., Inc.*, 254 F.R.D. 1, 12 (D.D.C. 2008) (same).  Here, the default judgment should be vacated because it was procured in ISS's absence on the basis of misrepresentations made by Semtek to this Court regarding the governing law, the liquidation of Merkuriy, the existence of a joint venture agreement, and the extent of ISS's commercial activities in the United States.

A.     Semtek Misrepresented to This Court That Massachusetts Law Governs the Issue of Successor Liability

The FSIA "requires courts to utilize the choice-of-law analysis of the forum state with respect to all issues governed by state substantive law."  *Century Int'l Arms, Ltd. v. Federal State Unitary Enters. State Corp. Rosvoorouzhenie*, 172 F. Supp. 2d 79, 89 (D.D.C. 2001).  The first task for a Massachusetts court confronted with a choice of law issue "is to determine whether there is an actual conflict between the substantive law of the interested jurisdictions."  *Silica*

---

[8] ISS also is required to show as a precondition to relief under Fed. R. Civ. P. 60(b)(3) that it possesses at least one potentially meritorious defense if the default judgment is vacated.  *See Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transportation Co., Inc.*, 953 F.2d 17, 21 (1st Cir. 1992).  For the reasons described in Section IV, *infra*, ISS possesses numerous potentially meritorious defenses that it will pursue vigorously if the default judgment is vacated, and this Court possesses jurisdiction over it.

*Tech, LLC v. J-Fiber, GmbH*, Civil Action No. 06-10293-WGY, 2009 WL 2579432, at *10 (D. Mass. May 19, 2009).  Assuming such a conflict exists, Massachusetts courts have "adopted a 'functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole."  *Motorsport Eng'g, Inc. v. Maserati, S.P.A.*, 183 F. Supp. 2d 209, 214 n.1 (D. Mass. 2001).

Here, Semtek simply failed to bring the choice of law issue to this Court's attention, and instead represented falsely that Massachusetts principles of corporate alter ego and successor liability govern the question of whether the judgment against Merkuriy can be enforced against ISS.  Semtek's omission had an outcome-determinative impact on the resolution of its motion to enter default judgment, because if the issue had been raised, this Court likely would have concluded under the law of the Russian Federation that ISS did not succeed to the liabilities of Merkuriy.

Indeed, there is a palpable difference between the law of Massachusetts and the Russian Federation on the issues of corporate alter ego and successor liability.  On the one hand, Massachusetts courts have adopted well-defined tests – recited in cases such as *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614 (1969) and *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547 (2008) – to adjudicate questions of alter ego and successor liability, respectively. The Russian Federation, on the other hand, *does not recognize either doctrine.*  With respect to the Massachusetts concept of alter ego liability, domestic law in the Russian Federation provides that two or more independent corporations may be held jointly liable only in cases provided by agreement between the parties or otherwise established by law.  *See* Affidavit of Igor Porokhin ("Porokhin Aff."), at Exh. A, pp. 2-6.[9]  Similarly, in the case of a sale of assets, the liabilities of a

---

[9] "Massachusetts law allows the court to take judicial notice of the laws of a foreign country . . . In 'determining such law,' the court 'may consider any relevant material source . . . Permissible sources to ascertain the content of foreign

selling corporation do not follow the assets to an acquiring corporation, unless specifically agreed or as recognized by law.  *See id.*  Accordingly, there is an actual conflict between the law of Massachusetts and the Russian Federation on these issues because the Russian Federation simply does not recognize the alter ego and successor liability doctrines expounded in *My Bread Baking Co.* and *Milliken & Co.*

Nor is there any question that this conflict of laws must be resolved in favor of the law of the Russian Federation.  Whether analyzed as responding to the interest of the parties, the states involved, or the interstate system as a whole, the Russian Federation is entitled to apply its domestic laws to the question of whether a Russian joint stock company (ISS) can succeed to the obligations and liabilities of a dissolved Russian limited liability company (Merkuriy).  Indeed, Article 1202 of the Russian Federation Civil Code establishes a mandatory rule whereby issues regarding corporate entities – including, formation, reorganization, liquidation, legal succession and acquisition – must be governed by the law of the country where that entity was incorporated.  *See* Porokhin Aff., at Exh. A, p. 6.  In these circumstances, Massachusetts can have no conceivable interest in resolving the issue of successor liability as between two Russian entities.  *See, e.g., Century Int'l Arms, Ltd.*, 172 F. Supp. 2d at 94 (under government interest analysis Russian Federation has more substantial interest in applying its law to alleged contract) ("Several factors, however, tilt the balance decidedly in favor of Russian law.  Defendant is an agency or instrumentality of the Russian government, and the subject matter of the alleged contract is Russian arms.  Russia has an extremely strong interest in ensuring that its state-controlled agencies are not subjected to laws that may contravene its own, so as not to interfere with the

---

law include certified translations of foreign statutes, legal writings about the foreign law and decisions by the courts of the foreign country . . . Expert testimony provides another means to determine the substance of foreign law." *Silica Tech, LLC*, 2009 WL, at *10.  *See also* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.")

Russian government's ability to continue to transact business with North American companies.").

Accordingly, this Court should vacate the default judgment under Fed. R. Civ. P. 60(b)(3)

because Semtek procured that judgment through misrepresentations that prevented this Court

from considering the fatal impact that an application of Russian law will have to Semtek's

claims.

B.    Semtek Misrepresented to this Court That Merkuriy Transferred its Assets to NPO PM

In its memorandum in support of the motion for default judgment, Merkuriy represented

to this Court that "[e]ventually, following the April 12, 2000 default judgment [in the Merkuriy

lawsuit], Merkuriy ceased ordinary business operations and its assets, including its offices,

officers, licenses, clients and business operations, were merged or consolidated into NPO PM

(now ISS), which remains, in part, nothing more than a mere continuation of the now defunct

Merkuriy entity." *See, e.g.,* Pl's Memo. (Dkt. No. 17), at p. 11.  This statement is a complete

misrepresentation.

In reality, for the period of time between July 1, 1992 (when NPO PM divested its shares

of Merkuriy pursuant to the presidential edict) to June 7, 2008 (when Merkuriy was liquidated),

*NPO PM owned absolutely no interest in Merkuriy.*  Moreover, at no time were any shares,

assets or operations of Merkuriy ever transferred or absorbed by NPO PM, because the shares of

Merkuriy Telestat were all sold to *NEKST* in August 2002.  *See* Sivirin Aff., ¶ 10.  It was

therefore entirely inaccurate for Semtek to inform this Court that NPO PM, rather than NEKST,

was the successor to Merkuriy.

Once again, Semtek's misrepresentation had an outcome-determinative impact on the

resolution of its motion for default judgment.  Had this Court been aware that Merkuriy's shares

were actually sold to NEKST in August 2002, it could not have concluded in its default

judgment that ISS, through NPO PM, was the successor to Merkuriy.  Even under the more

lenient test for successor liability set forth under Massachusetts law, such successor liability

would flow, if at all, to NEKST as the direct purchaser of Merkuriy's shares.  *See, e.g., Milliken

Co.*, 451 Mass. at 556 (test for successor liability applies to a predecessor corporation that sells

its assets directly to a successor corporation) (test for "de facto merger theory of successor

liability 'has usually been applied to situations in which the ownership, assets and management

of one corporation are combined with those of another, preexisting entity.'").  This Court

therefore should vacate the default judgment under Fed. R. Civ. P. 60(b)(3) because Semtek

procured that judgment in ISS's absence by misrepresenting to this Court the true identity of the

Russian entity that acquired Merkuriy's shares.

C.   <u>Semtek Misrepresented to This Court That a Contract Existed Between Itself and</u>
<u>Merkuriy</u>

Similarly misleading was Semtek's representation to this Court that Merkuriy and

Semtek, "with the approval and support of NPO PM," entered into a binding joint venture

agreement to "commercialize[e] the excess communications capacity of various NPO PM

satellites." *See* Pl's Memo. (Dkt. No. 17), at p. 14.  In reality, all of the available evidence

establishes conclusively that Merkuriy and Semtek's joint venture negotiations never progressed

past the preliminary stage, and were always expressly contingent upon the resolution of material

details in future agreements that were never consummated.  Indeed, Semtek never provided any

financial support to this contemplated joint venture because it never materialized.

Semtek simply ignored these critical facts in its effort to obtain a default judgment from

this Court.  For example:

- Semtek represented that it and Merkuriy executed an "agreement" on November 5,
  1992 "to cooperate 'in development and use of commercial satellite systems for
  communications and TV broadcasting,'" *see* Pl.'s Memo. (Dkt. No. 17), at p. 14
  (emphasis supplied), *without informing this Court* that the alleged "agreement" stated

on its face that it was valid for three months only and contemplated being superseded by a "different, more detailed document." *See* Business Agreement (Dkt. No. 19-4).

- Semtek represented that it and Merkuriy executed a "Protocol" on December 18, 1992 in which they "agreed to establish a joint venture relationship '[t]o market on a world-wide basis, spacecraft including low earth orbit and geosynchronous satellites for commercial communications," *see* Pl.'s Memo. (Dkt. No. 17), at p. 14, *without informing this Court* that the Protocol stated explicitly that that the parties "agreed to conclude the final joint venture agreement after a business plan of the joint venture has been approved" and "agree to proceed towards a final written agreement that will encompass all of the above understanding and any others that may be decided between them." *See* Protocol (Dkt. No. 19-5), at pp. 2, 6.[10]

- Semtek represented that it and Merkuriy executed a "Joint Venture Agreement" on May 2, 1993 giving their proposed joint venture the "exclusive 'authority to market, sell, lease or otherwise assign . . . satellites . . . . ' until December 31, 1994," *see* Pl.'s Memo. (Dkt. No. 17), at p. 14, *without informing this Court* that this document was actually labeled as a *letter of intent* and specified expressly that "[i]t is the intent of both MERKURIY and SEMTEK that a Joint Venture Agreement will be negotiated in good faith and signed by both parties on or before May 31, 1993." *See* Letter of Intent (Dkt. No. 19-7), at p. 3.

- Semtek represented that a binding joint venture existed between itself and Merkuriy, *see* Pl.'s Memo. (Dkt. No. 17), at p. 14, *without informing this Court* that the Joint Venture Agreement contemplated by the May 2, 1993 Letter of Intent was never executed. *See* Sivirin Aff., ¶ 20.

Equally deceptive were the representations made to this Court by Semtek regarding a letter from Sivirin to Shapiro regarding Semtek's authority to seek licensure from the United States Federal Communications Commission ("FCC") on Merkuriy's behalf. *See* Am. Compl. (Dkt. No. 7), at Exh. B. Specifically, during the course of negotiations for the proposed joint venture, Shapiro informed Sivirin that Semtek would be required to obtain a license from the FCC in order to conduct some of the activities contemplated by the putative joint venture, and that because the joint venture was only in the discussion stage, the FCC would not consider such an application unless Semtek could prove that it was somehow authorized to act on behalf of Merkuriy. *See* Sivirin Aff., ¶ 18. As a result, Shapiro requested that Sivirin fax Semtek the letter

---

[10] *See also* Webster's II New College Dictionary 910 (3d ed. 2005) (defining "protocol" as "[a] *preliminary* record or draft of a transaction.") (emphasis supplied).

attached as Exhibit B to Semtek's Amended Complaint (the "FCC Letter") stating that "MERKURIY LTD has authorized SEMTEK . . . to act as its agents in marketing communication channels of the LUCH satellite," and that the letter was intended to "be used to support SEMTEK [sic] application to the [FCC] to be licensed for employing the LUCH satellite . . . " *See id.*; Am. Compl. (Dkt. No. 7), at Exh. B.

Semtek represented to this Court in its Amended Complaint that the FCC Letter constitutes evidence of a "series of agreements which authorized Semtek to market, lease, sell or otherwise assign satellite communications services primarily in the United States, including specific and exclusive authority to market commercial communications channels and services on the Loutch and other satellites." *See* Am. Compl. (Dkt. No. 7), ¶ 11 (citing to FCC Letter). Given the straightforward intent of the FCC Letter – which was to provide the FCC with some assurance that Semtek had the backing of Merkuriy prior to consummation of the joint venture – it was disingenuous for Semtek to suggest to this Court that the letter somehow establishes the existence of a binding joint venture between Semtek and Merkuriy.

Had this Court been adequately informed at the outset that the evidence cited by Semtek falls far short of proving the existence of a binding joint venture, it would not have made the finding in its default judgment that "[i]n 1992, Semtek entered into an agreement with [Merkuriy] and [Sivirin] to market access to certain satellites and provide commercial communications services." *See* Default Judgment (Dkt. No. 26), ¶ 4. Indeed, under either the law of the Russian Federation or Massachusetts, the Business Agreement, Protocol and Letter of Intent amount to nothing more than evidence of preliminary negotiations that never ripened into a binding joint venture agreement. *See* Porokhin Aff., at Exh. B, pp. 2-4 (protocols of intent, agreements of intent, memoranda of understanding are not generally recognized as contracts

under law of Russian Federation) (although letters of intent may be recognized under Russian

law as "preliminary contracts" to enter into a future principal contract, such preliminary contracts

terminate if not finalized within the specified term, or in the absence of such term, within one

year); *Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 706 (1992) ("It is a settled principle

of contract law that '[a] promise made with an understood intention that it is not to be legally

binding, but only expressive of a present intention, is not a contract.'") (finding statement of

present intent in letter of intent to negotiate a definitive agreement in good faith to be non-

binding).  Accordingly, the default judgment should be vacated under Fed. R. Civ. P. 60(b)(3)

because Semtek procured that judgment in ISS's absence by misrepresenting to this Court the

preliminary and non-binding nature of the joint venture negotiations between Semtek and

Merkuriy.

III.    **The Default Judgment Must Be Vacated In the Interest of Justice**

Pursuant to Fed. R. Civ. P. 60(b)(6), this Court is empowered to vacate the default

judgment entered against ISS for "any other reason that justifies relief."  "Unlike any other

subsection of Rule 60, subsection (b)(6) is a catch-all provision, which broadens the grounds for

relief from judgment [and] gives the Court the power to provide relief wherever such action is

necessary to the delivery of justice."  *Tuckerbrook Alternative Invest., LP*, 2010 WL 4867608, at

*6.  Here, this Court should vacate the default judgment in the interest of justice because its

monetary component is speculative and overbroad and the injunctive component fails to specify

properly the conduct enjoined.

A.    The Monetary Component of the Default Judgment Is Speculative and Includes
        Treble Damages in Violation of the RICO Act and the FSIA

In its monetary component, the default judgment entered in this lawsuit orders ISS to pay

the sum of $381,396,000.00, plus interest, but does not make any findings regarding the basis for

that sum of damages.  *See* Default Judgment (Dkt. No. 26).  Rather, the default judgment simply

adopts the amount of damages entered in the Merkuriy lawsuit default judgment without

comment or explanation.  *See id.*  The default judgment entered in the Merkuriy lawsuit, in turn,

arrived at the $381,396,000.00 damages sum by accepting wholesale Semtek's allegation that it

lost actual profits in the amount of $127,132,000.00, and then trebling that sum pursuant to the

RICO Act.  *See* Memorandum of Law in Support of Plaintiff's Motion for Default Judgment,

Merkuriy App. (Dkt. No. 7); April 24, 1996 Default Judgment, Merkuriy App. (Dkt. No. 8)

(trebling actual damages of $127,132,000.00 to $381,396,000.00 pursuant to 18 U.S.C. §

1946(c)).  Justice requires that this monetary award against ISS be vacated because it is

speculative and because its trebling component violates both the RICO Act and the FSIA.

      1.      The Damages Award Entered in the Merkuriy Lawsuit is Speculative

In the Merkuriy lawsuit, Semtek based its calculation of actual damages entirely upon a

three-page affidavit from Arthur M. Lustgarten.  *See* Affidavit of Arthur M. Lustgarten in

support of Plaintiff's Motion for Default Judgment (the "Lustgarten Affidavit"), Merkuriy App.

(Dkt. No. 6).  As a basis for concluding that Semtek had suffered actual lost profits in the amount

of $127,132,000.00, the Lustgarten Affidavit stated as follows:

> Quantifying plaintiff's damages in this case essentially requires the determination of its
> lost profits resulting from the breach of contract and tortious conduct of Merkuriy
> Limited and Sivirn.  Plaintiff's satellite communications business was unestablished at the
> time of the breach, and accordingly exactitude is not possible in proving its damages.
> However, reasonable certainty is possible in such an endeavor.
>
> . . .
>
> In calculating plaintiff's lost profits, I relied on its information memorandum prepared for
> a private offering and on financial projections formulated during discussions by the
> company with Paine Webber regarding an underwriting of plaintiff's securities.[11]

---

[11] Because the Lustgarten Affidavit does not attach either the information memorandum or the Paine Webber
financial projections referenced in the text, ISS has not seen these documents.

. . .

I have been informed by management that the assumptions used as the basis for such projections were arrived at through market research, published data from competitors, cost data provided by its proposed Russian joint ventures, and other sources deemed reliable by Semtek's management.  In rendering my opinion I have relied on the accuracy of those projections.  It is customary in my profession to so rely in forming an opinion.

*See id.*, ¶¶ 4-6.  Simply stated, the Lustgarten Affidavit falls far short of qualifying as expert evidence that can be considered in calculating lost profit damages.

"That *Daubert [v. Merrill Dow Pharms., Inc.]* is properly applied to the screening of expert testimony regarding future earnings and lost profits is no longer a matter of dispute." *Albert v. Warner-Lambert Co.*, 234 F. Supp. 2d 101, 105 (D. Mass. 2002).  Under *Daubert*, the trial court is required to exercise a gatekeeping function to exclude "junky" science, and may admit expert testimony only if: (1) the witness is shown to "be sufficiently qualified by 'knowledge, skill, experience, training, or education'"; and (2) "any and all scientific testimony or evidence admitted is not only relevant, but [also] reliable." *See id.* at 104.  *See also United States v. Norris*, 271 F.3d 262, 269 (5th Cir. 2000) ("Under *Daubert*, the district court conducts a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'")  Here, the Lustgarten Affidavit fails on both of these fronts.

First, Lustgarten was not qualified to offer an opinion regarding lost profits in the Merkuriy lawsuit because, while he professed to have experience in the aviation and electronic industries, he had absolutely no experience in the field of satellite operations.  *Compare* Lustgarten Affidavit, Merkuriy App. (Dkt. No. 6), ¶ 3 ("I *believe* that I am qualified as an expert to render such an opinion in this case . . . I have been evaluating companies and their finances for more than twenty years, and have direct knowledge of the aviation and electronics industries through nearly fifteen years of senior management employment therein.") (emphasis supplied)

with *Silva v. American Airlines, Inc.*, 960 F. Supp. 528, 531 (D.P.R. 1997) (civil engineer was not qualified to testify regarding the design of an overhead bin compartment of an airplane; prior to the case he had "no experience in the design, manufacturing or operation of an aircraft," and "an expert must have specific knowledge, not mere capacity to acquire knowledge").

Second, the Lustgarten Affidavit is inadmissible because it is not reliable expert opinion testimony.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  *See also id.* (holding that expert's mere assertion that a method is reliable is insufficient to establish its admissibility).  Here, the Lustgarten Affidavit makes no effort to describe the methodology for its calculations, or to explain the assumptions or underlying data relied upon.  It therefore represents precisely the type of junk science that *Daubert* requires this Court to reject.  *See, e.g.*, *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984) (where expert made assumptions and assertions that were "unrealistic and contradictory," and his "proposed testimony was riddled with errors," trial court properly excluded the testimony); *In re Bonham*, 251 B.R. 113, 135-36 (D. Al. 2000) (excluding testimony where expert report was "based on substantial factual mistakes, speculation, innuendo, and inferences which are not supported by full explanations and analysis").

Because the Lustgarten Affidavit fails to qualify as expert evidence, there is no basis in the default judgment for an award of $381,396,000.00 to Semtek.  Accordingly, the default judgment should be vacated in the interest of justice because the damages that it awards are inherently speculative.

2.      The Trebling of Damages Violates the RICO Act's Presumption Against
Extraterritorial Application

The U.S. Supreme Court has recently reaffirmed that "[w]hen a statute gives no clear

indication of an extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd.*,

– U.S. –, 130 S. Ct. 2869, 2878 (2010).  *See also Norex Petroleum Ltd. v. Access Indus., Inc.*,

631 F.3d 29, 32 (2d Cir. 2010) ("*Morrison* wholeheartedly embraces application of the

presumption against extraterritoriality, finding that 'unless there is the affirmative intention of the

Congress clearly expressed to give a statute extraterritorial effect, we must presume it is

primarily concerned with domestic conditions.'")  Moreover, because "[t]he RICO statute is

silent as to any extraterritorial application . . . under *Morrison*, [it] is presumed not to apply to

RICO claims that are essentially extraterritorial in focus." *Cedeno v. Intech Group, Inc.*, 733 F.

Supp. 2d 471, 473 (S.D.N.Y. 2010).

Here, for the same reasons that Merkuriy did not conduct commercial activities in the

United States, *see* Section I.A.1, *supra*, the RICO claim from the Merkuriy lawsuit is fatally

flawed because it is "essentially extraterritorial in focus."  Accordingly, the default judgment

against ISS must be vacated in the interest of justice because it is based upon a trebling of

damages under a statute that could not have provided a basis for liability in the Merkuriy lawsuit.

3.      The Trebling of Damages Violates FSIA's Prohibition Against Punitive
Damages

Under Section 1606 of the FSIA, punitive damages are not available against foreign

states or "divisions of a foreign state that are considered to be the state itself, instead of an agent

or instrumentality thereof."  *See* 28 U.S.C. § 1606; *Estate of Heiser v. Islamic Republic of Iran*,

466 F. Supp. 2d 229, 270 (D.D.C. 2006).  For purposes of this statutory provision, "[e]ntities that

are governmental are considered a part of the foreign state itself, while commercial entities are

deemed agencies or instrumentalities of the foreign state, and thereby subject to punitive damages."  *Estate of Heiser*, 466 F. Supp. 2d at 270.

Here, Semtek admits that ISS is an agency or instrumentality of the Russian Federation.  *See* Compl. (Dkt. No. 1), ¶¶ 3-4; Am. Compl. (Dkt. No. 7), ¶¶ 3-4.  However, for purposes of Section 1606 of the FSIA, ISS also can be considered a division of the Russian Federation that is equivalent to the state itself, because the functions of ISS – relating to the manufacture and operation of satellites for state purposes, *see* Sivirin Aff., ¶ 3 – are governmental, rather than commercial, in nature.  *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) (finding Iran Ministry of Foreign Affairs to be division of the state itself because a "nation's armed forces are clearly on the governmental side," and the "conduct of foreign affairs is an important and 'indispensable' governmental function.")  Accordingly, the FSIA prohibits an award of punitive damages against ISS, and the default judgment therefore should be vacated in the interest of justice because it awarded punitive damages impermissibly by adopting the trebling of Semtek's alleged lost profits in the Merkuriy lawsuit.

B.    The Injunctive Component of the Default Judgment Violates the Specificity Requirements of Fed. R. Civ. P. 65(d)

Fed. R. Civ. P. 65(d) requires that every preliminary injunction issued by this Court must: (1) "state the reasons why it issued"; (2) "state its terms specifically"; and (3) "describe in reasonable detail – and not by referring to the *complaint or other document* – the act or acts restrained or required."  Fed. R. Civ. P. 65(d) (emphasis supplied).  As the U.S. Supreme Court has explained:

> [T]he specificity provisions of Rule 65(d) are no mere technical requirement.  The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood . . . Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.

38

*Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  *See also Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991) ("In determining specificity, the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden.")  Here, the injunctive component of the default judgment falls far short of meeting this standard.

Indeed, the injunction entered against ISS is very confusing.  Because the same form of injunction was first issued against Merkuriy and Sivirin at the conclusion of the Merkuriy lawsuit, the terms of the injunction allude to an "agency agreement" and potential agreements with Transworld, Lockheed Martin Corporation ("Lockheed") and Martin Marietta Corporation ("Martin Marietta").  While reference to these alleged agreements may have made sense in the context of business activities conducted by Merkuriy in the early-1990's, they bear absolutely no relation to ISS or the current business activities that it conducts.  Simply put, enjoining ISS from engaging in the same type of business activities conducted over fifteen years ago by a different company to which ISS has no relation engenders precisely the type of uncertainty and confusion that Fed. R. Civ. P. 65(d) was designed to prevent.[12]

The injunction entered against ISS also fails to meet the requirements of Fed. R. Civ. P. 65(d) on its face.  First, the injunction makes absolutely no effort to "state the reasons why it issued."  *See* Fed. R. Civ. P. 65(d)(A).  Second, the injunction fails to "state its terms specifically" or describe the acts restrained in "reasonable detail" because it does exactly what Fed. R. Civ. P. 65(d)(C) prohibits – it defines the conduct enjoined by reference to the "complaint" and to "document[s]."  *See* Fed. R. Civ. P. 65(d)(B)-(C).  It is simply not enough for

---

[12] As one example of the incongruity that will be created if the injunction remains in place, ISS notes that the commercial applications for the Russian satellites referenced in Semtek's alleged joint venture agreement – the Loutch-1 satellite, *see* Protocol (Dkt. No. 19-5), and proposed Loutch-2 satellites, *see* Letter of Intent (Dkt. No. 19-7) – no longer exist.  All of these satellites either failed at launch or were taken out of operation by 1997.  It makes no sense to enjoin ISS from commercializing satellites that are no longer in operation.  Moreover, the current-generation Loutch 5A and 5B satellites, if launched, are ordered by the Russian Federation, intended for exclusive state use by the Russian Federation and have no planned commercial applications.

the injunction to state vaguely that ISS cannot interfere with an "agency agreement alleged in the complaint" or with "any agreement" reached with Transworld, Lockheed or Martin Marietta. *Compare* Default Judgment (Dkt. No. 26) *with Petrello v. White*, 533 F.3d 110, 115-16 (2d Cir. 2008) (injunction requiring defendant to perform "according to the terms" of a contract fails specificity provisions of Rule 65 because the acts required of defendant cannot be ascertained without consulting the contract).  Justice therefore requires that this Court vacate the default judgment so as to protect ISS from having to guess at the conduct that has been enjoined.

IV.     **ISS Can Assert Potentially Meritorious Defenses on the Merits**

"[W]hile a movant, in order to set aside a judgment, need not establish that it possesses an ironclad claim or defense which will guarantee success at trial, it must at least establish that it possesses a potentially meritorious claim or defense which, if proven, will bring success in its wake." *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transportation Co., Inc.*, 953 F.2d 17, 21 (1st Cir. 1992).  Here, ISS has numerous potentially meritorious defenses that it will assert vigorously on the merits of Semtek's claims if this Court vacates the default judgment and acquires jurisdiction over ISS.  Listed below or some of those defenses.[13]

A.      This Court Lacks Subject Matter and Personal Jurisdiction to Adjudicate Semtek's Claims Because ISS is Immune From Suit under the FSIA

For the reasons set forth in Section I, *supra*, ISS has a potentially meritorious defense that this lawsuit should be dismissed for lack of subject matter and personal jurisdiction on the basis of ISS's immunity under the FSIA.

---

[13] This is not intended to be an exhaustive list, and ISS reserves the right assert additional defenses as necessary at the appropriate time.

B.      This Court Lacks Personal Jurisdiction Over ISS

For the reasons set forth in note 6, *supra*, this Court lacks personal jurisdiction over ISS under the traditional due process minimum contacts test.

C.      Semtek Failed to Serve ISS With Process Properly

For the reasons set forth in Section I.B, *supra*, this Court lacks jurisdiction to consider Semtek's claims because ISS was not served with process properly.

D.      Semtek Fails to State a Claim That ISS is Successor to Merkuriy

For the reasons set forth in Sections II.A and II.B, *supra*, ISS has a potentially meritorious defense that Semtek's Amended Complaint fails to state a claim that ISS is liable for the judgment entered against Merkuriy as its corporate successor where the internal law of the Russian Federation does not recognize the concepts of corporate alter ego or successor liability.

E.      Semtek Fails to State a Claim that a Contract Existed Between Semtek and Merkuriy

For the reasons set forth in Section II.C, *supra*, ISS has a potentially meritorious defense that Semtek's Amended Complaint fails to state a claim because Semtek cannot prove that a binding joint venture agreement existed between Semtek and Merkuriy.

F.      Semtek's Claims Are Subject to Dismissal in Favor of a More Convenient Forum

In the First Circuit, "[w]hen a defendant moves for dismissal on forum non conveniens grounds, it bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiently strongly favor litigating the claim in the alternative forum . . . The first condition is usually met 'if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there . . . To determine whether the defendant satisfies the second condition, a more involved inquiry is required as 'the defendant must show

that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal." *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 101 (1st Cir. 2009).

Here, ISS has a potentially meritorious defense that this lawsuit should be dismissed in favor of an available forum in the Russian Federation that is more convenient because most evidence regarding the question of corporate successor liability is located there, witnesses knowledgeable about the liquidation of Merkuriy are based there, the Russian Federation has a compelling interest in resolving questions regarding its corporate entities, and the law of the Russian Federation will apply to the corporate successor element of this dispute.

G.     Semtek's Claims Are Barred by the Equitable Doctrine of Laches

"Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Museum of Fine Arts, Boston v. Seger-Thomschitz*, 623 F.3d 1, 10 n.9 (1st Cir. 2010). Here, ISS has a potentially meritorious defense that Semtek's claims are barred by the equitable doctrine of laches because Semtek waited an unreasonably long time in attempting to assert its corporate successor arguments to the prejudice of ISS.

H.     Semtek's Claims Are Barred Because They Seek Speculative Damages

For the reasons set forth in Section III.A.1, *supra*, ISS has a potentially meritorious defense that Semtek's claims should be dismissed because the damages sought are speculative.

I.     Semtek's Claims Are Barred Because the RICO Act Does Not Apply Here

For the reasons set forth in Section III.A.2, *supra*, ISS has a potentially meritorious defense that Semtek's claims should be dismissed because the RICO Act cannot be applied extraterritorially to acts and omissions occurring primarily in the Russian Federation. In addition, ISS has a potentially meritorious defense that Semtek's underlying claims, which

amount to claims for breach of a putative joint venture agreement, do not adequately state a claim under the RICO Act because a breach of contract does not amount to racketeering activity. *See, e.g., McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) (holding that a breach of contract does not "in itself constitute a scheme to defraud"); *Ownby v. Cohen*, 19 F. Supp. 2d 558, 565 (W.D. Va. 1998) ("[B]reach of contract and breach of fiduciary duty are not among the crimes recognized as racketeering under RICO.")

 J. <u>Semtek's Claims Are Barred Because the FSIA Prohibits the Award of Punitive Damages</u>

For the reasons set forth in Section III.A.3, *supra*, ISS has a potentially meritorious defense that Semtek's claims should be dismissed because the FSIA prohibits an award of punitive damages against ISS.

 K. <u>Semtek Fails to State Claims Upon Which Relief May Be Granted</u>

ISS has a potentially meritorious defense that Semtek's claims for enforcement of the judgment entered in the Merkuriy lawsuit, declaratory judgment and injunctive relief fail on their face to state plausible claims upon which relief can be granted pursuant to the standard announced by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2009).

<u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, defendant, ISS, respectfully requests that this Court: (1) vacate the default judgment entered in this action on February 1, 2011; and (2) dismiss this lawsuit with prejudice based on a lack of subject matter and personal jurisdiction arising from ISS's immunity from suit under the FSIA.

43

Respectfully submitted,

ACADEMICIAN M.F. RESHETNEV
INFORMATION SATELLITE SYSTEMS,

By its attorneys,


/s/ Ralph T. Lepore, III
Ralph T. Lepore, III (BBO #294420)
Michael T. Maroney (BBO #653476)
Benjamin M. McGovern (BBO #661611)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
ralph.lepore@hklaw.com
michael.maroney@hklaw.com
benjamin.mcgovern@hklaw.com

Date: June 8, 2011

## <u>CERTIFICATE OF SERVICE</u>

I, Ralph T. Lepore, III, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 8th day of June, 2011.

<u>/s/ Ralph T. Lepore, III</u>
Ralph T. Lepore, III

Dated:  June 8, 2011

#10380939_v1