UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEMTEK INTERNATIONAL INCORPORATED,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ACADEMICIAN M.F. RESHETNEV INFORMATION SATELLITE SYSTEMS,<br><br>　　　　　　　Defendant. | C.A. NO. 1:09-CV-10183-RWZ<br><br>**[ LEAVE TO FILE GRANTED ON AUGUST 12, 2011 ]** |

**REPLY MEMORANDUM OF DEFENDANT
ADADEMICIAN M.F. RESHETNEV INFORMATION SATELLITE SYSTEMS
IN SUPPORT OF ITS MOTION TO VACATE DEFAULT JUDGMENT**

　　　　　　　　　　　　　　　　　　　　Ralph T. Lepore, III (BBO #294420)
　　　　　　　　　　　　　　　　　　　　Michael T. Maroney (BBO #653476)
　　　　　　　　　　　　　　　　　　　　Benjamin M. McGovern (BBO #661611)
　　　　　　　　　　　　　　　　　　　　HOLLAND & KNIGHT LLP
　　　　　　　　　　　　　　　　　　　　10 St. James Avenue
　　　　　　　　　　　　　　　　　　　　Boston, MA 02116
　　　　　　　　　　　　　　　　　　　　(617) 523-2700
　　　　　　　　　　　　　　　　　　　　ralph.lepore@hklaw.com
　　　　　　　　　　　　　　　　　　　　michael.maroney@hklaw.com
　　　　　　　　　　　　　　　　　　　　benjamin.mcgovern@hklaw.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant Information Satellite Systems*

Date: August 12, 2011

# **TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | | Rule 60(b)(4) is the Appropriate Procedural Mechanism for This Court to Determine Whether ISS is Immune from Suit Under the FSIA | 1 |
| | A. | ISS's FSIA Immunity Distinguishes this Case From the Precedent Cited by Semtek | 2 |
| | B. | There is No Merit to Semtek's Contention that ISS's FSIA Immunity Arguments are Precluded as Substantive | 5 |
| | C. | Semtek Did Not Furnish This Court With an Arguable Basis for Concluding That Subject Matter Jurisdiction Existed | 6 |
| | D. | Rule 60(b)(6) Provides This Court With an Alternative Mechanism to Vacate the Default Judgment | 7 |
| II. | | Semtek Has Not Met its Burden of Proving Appropriate Service Under the FSIA | 8 |
| III. | | The FSIA Commercial Activity Exception is Not Triggered by ISS's Current Business Activities | 9 |
| IV. | | The Default Judgment Should be Vacated Under Rule 60(b)(3) Because it Was Unfairly Obtained by Semtek's Misrepresentations and Misconduct | 10 |
| | A. | Semtek's Misrepresentations and Misconduct Allowed it to Obtain the Default Judgment Unfairly | 10 |
| | B. | Semtek's Belief in the Truth of Mistaken Allegations is Irrelevant | 11 |

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*Anderson v. Cryovac, Inc.*,
   862 F.2d 910 (1st Cir. 1988) ............................................................................................... 11

*Baella-Silva v. Hulsey*,
   454 F.3d 5 (1st Cir. 2006) ....................................................................................................... 3

*Capizzi v. States Resources Corp.*,
   No. Civ.A.02-12319-DPW, 2005 WL 113679 (D. Mass. 2005) .............................................. 11

*Export Group v. Reef Indus.*,
   54 F.3d 1466 (9th Cir. 1995) ................................................................................................... 5

*Fafel v. DiPaola*,
   399 F.3d 403 (1st Cir. 2005) .......................................................................................... 1, 3, 4

*First Fidelity Bank, N.A. v. Government of Antigua*,
   877 F.2d 189 (2d Cir. 1989) ........................................................................................... 3, 6, 7

*Gregorian v. Izvestia*,
   871 F.2d 1515 ........................................................................................................................ 4

*Honneus v. Donovan*,
   691 F.2d 1 (1st Cir. 1982) .................................................................................................. 3, 4

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) ............................................................................................................... 2

*Jackson v. Fie Corp.*,
   302 F.3d 515 (5th Cir. 2002) ................................................................................................... 5

*Jackson v. People's Republic of China*,
   794 F.2d 1490 (11th Cir. 1986) ............................................................................................... 7

*KAO HWA Shipping Co. v. China Steel Corp.*,
   816 F. Supp. 910 (S.D.N.Y. 1993) .......................................................................................... 5

*Karak v. Bursaw Oil Corp.*,
   288 F.3d 15 (1st Cir. 2002) .............................................................................................. 10, 11

*LeDonne v. Gulf Air, Inc.*,
   700 F. Supp. 1400 (E.D. Va. 1988) ......................................................................................... 8

*Lippus v. Dahlgren Mfg. Co.*,
  644 F. Supp. 1473 (E.D.N.Y. 1986) ...........................................................................8

*Lubben v. Selective Serv. Sys. Local Bd. No. 27*,
  453 F.2d 645 (1st Cir. 1972) ......................................................................................3

*Magness v. Russian Federation*,
  247 F.3d 609 (5th Cir. 2001) ..................................................................................8, 9

*NYSA-ILA Pension Trust Fund v. Garuda Indonesia*,
  7 F.3d 38 (2d Cir. 1993) ..........................................................................................10

*Ojeda-Toro v. Rivera-Mendez*,
  853 F.2d 25 (1st Cir. 1988) .......................................................................................11

*Practical Concepts, Inc. v. Republic of Bolivia*,
  811 F.2d 1543 (D.C. Cir. 1987) (Ginsburg, J.) ................................................. 2, 3, 4

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ...................................................................................................6

*Seven Elves, Inc. v. Eskenazi*,
  635 F.2d 396 (5th Cir. 1981) .....................................................................................7

*Unidyne Corp. v. Aerolineas Argentinas*,
  590 F. Supp. 391 (E.D. Va. 1984) .............................................................................8

*United States v. One Rural Lot #11*,
  93 Fed. Appx. 241 (1st Cir. 2004) ............................................................................11

*Upton v. Empire of Iran*,
  459 F. Supp. 264 (D.D.C. 1978) ................................................................................6

STATUTES

28 U.S.C. § 1608(b) ..........................................................................................................8, 9

28 U.S.C. § 1608(e) ...............................................................................................................9

OTHER AUTHORITIES

Fed. R. App. P. 4(a) ...............................................................................................................1

Fed. R. Civ. P. 68 ..................................................................................................................3

Fed. R. Civ. P. 60(b) .........................................................................................4, 7, 10, 11, 12

ISS[1] hereby submits this reply memorandum in response to arguments raised by Semtek for the first time in its opposition without waiver of any argument advanced by ISS in its opening memorandum or any of the potentially meritorious defenses that ISS intends to raise on the merits if the default judgment is vacated.

I. **Rule 60(b)(4) is the Appropriate Procedural Mechanism for This Court to Determine Whether ISS is Immune from Suit Under the FSIA**

The default judgment entered in this action is void, and must therefore be vacated under Rule 60(b)(4), because it was entered against a defendant that is absolutely immune from suit under the FSIA. In its opposition, Semtek suggests incorrectly that the question of ISS's immunity could only have been determined through a direct appeal of the default judgment. Now that the appeal period has elapsed, Semtek characterizes ISS's request for relief under Fed. R. Civ. P. 60(b)(4) as an impermissible "collateral" attack on the default judgment.[2] This argument ignores generally the purposes of Rule 60(b)(4) and ignores completely and specifically here the significance of ISS's status as a foreign sovereign to the determination of whether the default judgment should be vacated.

It is well-established in the First Circuit that collateral review is *always* available under Fed. R. Civ. P. 60(b)(4) to challenge "void" judgments that are "complete nullit[ies]" from their inception because, for example, subject-matter jurisdiction is lacking. *See, e.g., Fafel v. DiPaola*, 399 F.3d 403, 410 (1st Cir. 2005) ("Nevertheless, a motion for relief from an unappealed judgment alleged to be void for lack of subject-matter jurisdiction may succeed if the

---

[1] Capitalized terms shall be defined in this reply memorandum as those same terms are defined in ISS's memorandum in support of its motion to vacate default judgment. *See* Memorandum of ISS in Support of its Motion to Vacate Default Judgment ("ISS Opening Memo.") (Dkt. No. 35).

[2] Semtek's insistence that a direct appeal is the only mechanism for review is particularly disingenuous where, as here, it waited for sixteen days – or over half of ISS's thirty-day appeal period under Fed. R. App. P. 4(a) – before attempting to serve ISS in Russia with notice of the default judgment. *See* Supplemental Aff. of John Fawcett (Dkt. No. 40-1), ¶ 26 (alleging that Semtek's counsel mailed a package containing the February 1, 2011 default judgment on February 16, 2011).

rigorous standard for such relief is met.") *Cf. Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding."); *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C. Cir. 1987) (Ginsburg, J.) ("A defendant who knows of an action but believes the court lacks jurisdiction over his person or over the subject matter generally has an election. He may appear, raise the jurisdictional objection, and ultimately pursue it on direct appeal . . . . Alternatively, the defendant may refrain from appearing, thereby exposing himself to the risk of default judgment. When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection.")

The cases cited by Semtek in its opposition recite a corollary to that rule – a direct appeal is the only mechanism available to challenge merely "erroneous" judgments in which a district court incorrectly exercises subject-matter jurisdiction, but possesses an "arguable basis" for doing so. *See, e.g., Fafel*, 399 F.3d at 410-11. Here, the default judgment against ISS is void, and not merely erroneous, because ISS's FSIA immunity rendered the default judgment a nullity from its inception.

### A. ISS's FSIA Immunity Distinguishes this Case From the Precedent Cited by Semtek

*None* of the First Circuit cases cited by Semtek in its opposition involve an analysis of sovereign immunity under the FSIA.[3] Rather, the First Circuit concluded in those cases that

---

[3] Indeed, the only case cited by Semtek in its opposition involving FSIA immunity actually supports ISS's position. In *Meadows v. Dominican Republic*, the district court for the Northern District of California entered a default judgment against the defendant on June 1, 1984. *See* 628 F. Supp. 599, 602 (N.D. Cal. 1986). Nearly one year later – on April 10, 1985 – the defendant filed a motion to vacate the default judgment arguing, *inter alia*, that the default judgment was void on the basis of FSIA immunity. *See id.* at 602-03. Although the period for direct appeal had already run, the court considered the defendant's FSIA immunity arguments on their merits through the procedural

2

"erroneous" judgments could be challenged on direct appeal because they were premised on the following "arguable" – albeit mistaken – bases for exercising subject-matter jurisdiction: (i) a notice of removal asserting that non-diverse parties were fraudulently joined, *see Baella-Silva v. Hulsey*, 454 F.3d 5, 10 (1st Cir. 2006); (ii) a reasonable finding that ancillary subject-matter jurisdiction existed to enforce a Fed. R. Civ. P. 68 judgment, *see Fafel*, 399 F.3d at 415; (iii) a complaint alleging erroneously that a Pennsylvania prisoner was a citizen of Florida for purposes of diversity jurisdiction, *see Honneus v. Donovan*, 691 F.2d 1, 2 (1st Cir. 1982); and (iv) a judicial interpretation of a statutory grant of jurisdiction that was later reversed, *see Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 650 (1st Cir. 1972).

The situation presented in this case is fundamentally different. As other courts have noted, the exercise of jurisdiction over a foreign sovereign entitled to FSIA immunity creates a defect far more serious than the erroneous exercise of jurisdiction over a domestic defendant who is forced to defend in the wrong forum. In *Practical Concepts*, for example, then-Circuit Judge Ginsburg concluded that it was correct for the district court to have considered issues of FSIA immunity presented by the Republic of Bolivia through a collateral attack on a default judgment filed pursuant to Rule 60(b)(4) over one year after entry of the judgment. *See* 811 F.2d at 1545, 1547-48. In so doing, the court observed that "it is in the interest of the United States' foreign policy to encourage foreign states to appear before our courts in cases brought under the FSIA. When a defendant foreign state has appeared and asserts legal defenses, albeit after a default judgment has been entered, it is important that those defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments." *Id.* at 1552. *See also First Fidelity Bank, N.A. v. Government of Antigua*, 877 F.2d 189, 196 (2d Cir. 1989)

---

vehicle of the Rule 60(b)(4) motion. *See id.* at 603-08. There is no impediment to this Court doing the same with respect to ISS's motion.

3

("[D]efault judgments are disfavored, especially those against foreign sovereigns . . . Courts go to great lengths to avoid default judgments against foreign sovereigns or to permit those judgments to be set aside.")

Based on that rationale, the *Practical Concepts* court distinguished explicitly the gravity of wrongfully asserting jurisdiction over a foreign sovereign from the type of "writ small" jurisdictional issue confronted by the First Circuit in *Honneus*.  *See id.* at 1547 n.7.  Specifically, the court noted that "the identity or diversity of United States citizenship matter raised in *Honneus* is hardly comparable to the plea Bolivia presents here - that, because of its status as a foreign sovereign and the nature of the contract at issue, no court in the United States - federal or state - has the authority to adjudicate [plaintiff's] claim."  *See id.* at 1547 n.7.  For that reason, the court held that the district court had been correct to entertain Bolivia's Rule 60(b)(4) motion even after the expiration of its appeal period because "Bolivia 'could wait [] until after execution of the judgment was under way to raise its jurisdictional point' . . . ."  *Id.* at 1548.

The same result should obtain here because ISS's reasonable belief that it was immune from suit under the FSIA justifies its initial failure to appear and establishes the "total want of jurisdiction" required to render the default judgment void.  *See Fafel*, 399 F.3d at 410 (unappealed judgment may be attacked collaterally where there is a total want of jurisdiction).  *See also Gregorian v. Izvestia*, 871 F.2d 1515, 1525 ("[W]here, as here, a foreign sovereign defendant's reasonable belief that it is immune from suit leads it to refuse to appear in an action brought under the FSIA, a court may not characterize this refusal as 'culpable conduct' for purposes of a Rule 60(b) motion to set aside a default judgment.")

Indeed, in similar circumstances, numerous courts from around the country have considered Rule 60(b)(4) arguments to vacate default judgments based on FSIA immunity

without requiring the defendant to appeal directly from the judgment. *See Jackson v. Fie Corp.*, 302 F.3d 515, 522-24, 531 (5th Cir. 2002) (reversing denial of Rule 60(b)(4) motion to vacate two-year old default judgment asserting FSIA immunity) ("[Rule 60(b)(4)] embodies the principle that in federal court, a 'defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds . . . The [plaintiffs'] contention that [defendant] cannot make a Rule 60(b)(4) motion nearly two years after suffering the default judgment runs into similar difficulties . . . the mere passage of time cannot convert an absolutely void judgment into a valid one."); *Export Group v. Reef Indus.*, 54 F.3d 1466, 1469 (9th Cir. 1995) (addressing merits of FSIA immunity arguments in context of Rule 60(b)(4) motion); *KAO HWA Shipping Co. v. China Steel Corp.*, 816 F. Supp. 910, 918 (S.D.N.Y. 1993) (granting Rule 60(b)(4) motion and dismissing action on grounds that default judgment was void by virtue of defendant's FSIA immunity).

    B.    <u>There is No Merit to Semtek's Contention that ISS's FSIA Immunity Arguments are Precluded as Substantive</u>

Nor is ISS precluded from seeking to vacate the default judgment pursuant to Rule 60(b)(4) because its assertion of FSIA immunity involves issues that Semtek characterizes as having to do with "substantive" law, and not subject matter jurisdiction. *See* Semtek Opp. (Dkt. No. 40), at pp. 12-13. This argument elevates form over substance and ignores completely that a consideration of the merits is nearly unavoidable in an analysis of subject-matter jurisdiction under the FSIA.

"[T]he Supreme Court has recognized that a district court's subject matter jurisdiction depends upon the existence of an exception to foreign sovereign immunity . . . It is not surprising, then, that a decision concerning subject matter jurisdiction under the FSIA may require the resolution of substantive issues." *First Fidelity Bank, N.A.*, 877 F.2d at 194-95. *See*

5

*also Upton v. Empire of Iran*, 459 F. Supp. 264, 265 (D.D.C. 1978) (holding that the FSIA "creates an identity of substance and procedure."). Courts confronted with this issue have concluded that it is appropriate to consider questions of substantive law in the context of FSIA immunity notwithstanding that generally errors of substantive law are not presented in Rule 60(b)(4) motions because it is "impossible to make a decision concerning subject matter jurisdiction [under the FSIA] without considering the merits." *See, e.g., First Fidelity Bank, N.A.*, 877 F.2d at 194 (distinguishing *Meadows* opinion cited by Semtek). The same result should obtain here.

### C. Semtek Did Not Furnish This Court With an Arguable Basis for Concluding That Subject Matter Jurisdiction Existed

Semtek cannot assert credibly that it provided this Court with an "arguable basis" for concluding that subject-matter jurisdiction existed to enter the default judgment. Semtek admits that ISS is an agency or instrumentality of the Russian Federation that is presumptively immune under the FSIA. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); Am. Compl. (Dkt. No. 1), ¶¶ 3-4. Semtek did not request findings from this Court in its proposed default judgment that a FSIA exception should override ISS's presumed immunity. *See* Default Judgment (Proposed Order) (Dkt. No. 25). And the default judgment ultimately entered by this Court does not contain any such findings. *See* Default Judgment (Dkt. No. 26). Nor is it sufficient for Semtek to suggest that this Court made implicit findings to that effect where, as here, the materials submitted by Semtek in support of its motion for default judgment misrepresented the governing law, the circumstances surrounding the liquidation of Merkuriy, and the alleged existence of a joint venture agreement. *See* ISS Opening Memo. (Dkt. No. 35), at Section II.

D.   Rule 60(b)(6) Provides This Court With an Alternative Mechanism to Vacate the Default Judgment

Assuming, *arguendo*, that the factual record before this Court is insufficient for purposes of determining whether the default judgment is void under Rule 60(b)(4), which ISS does not concede, this Court should still vacate the default judgment on Rule 60(b)(6) grounds and permit limited discovery on the issue of FSIA immunity.[4]  In circumstances where issues relating to subject-matter jurisdiction under the FSIA are interwoven with the merits of the case, it represents an abuse of discretion for a district court to deny relief under Rule 60(b)(6) without allowing the substantive and jurisdictional issues bearing on FSIA immunity to be tested through discovery and the adversarial process.  *See First Fidelity Bank, N.A.*, 877 F.2d at 196 ("In this case, the fusion of substantive and jurisdictional issues also militates in favor of setting aside the default judgment pursuant to Rule 60(b)(6); the parties must proceed to discovery and possibly to trial before a court can rule on either substance or jurisdiction.  We conclude that it was an abuse of discretion not to set aside the default judgment under Rule 60(b)(6)."); *Jackson v. People's Republic of China*, 794 F.2d 1490, 1496 (11th Cir. 1986) (affirming order to vacate default judgment pursuant to Rule 60(b)(6) on basis of pre-FSIA principles of foreign sovereign immunity).  To the extent that the merits are inextricably intertwined with the FSIA analysis in this case, this Court should vacate the default judgment under Rule 60(b)(6) as an alternative to Rule 60(b)(4), particularly given the large sum of the judgment at issue.  *See Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981) (equities weigh in favor of granting Rule 60(b) relief where "the amount of money involved is very great.")

---

[4] Notably, even Semtek concedes that discovery may be appropriate on this issue.  *See* Semtek Opp. (Dkt. No. 40), at pp. 27-28.

## II.     Semtek Has Not Met its Burden of Proving Appropriate Service Under the FSIA

Semtek argues in its opposition that any technical defects in service of process should be overlooked in this case because it "substantially complied" with the service requirements set forth in 28 U.S.C. § 1608(b). Assuming, *arguendo*, that strict compliance with the FSIA can be excused in this case, which ISS does not concede,[5] Semtek has failed to comply even substantially with § 1608(b) because its attempted service was not reasonably calculated to give actual notice to an ISS official with authority to respond to legal proceedings in the United States.

Even in instances where substantial compliance with § 1608(b) is sanctioned, courts require plaintiffs to bear the burden of proving that their substantial compliance is coupled with evidence that the defendant received "actual notice" of the lawsuit. *See Magness v. Russian Federation*, 247 F.3d 609, 617-18 (5th Cir. 2001). Under the FSIA, however, "proving 'actual notice' requires more than a mere showing that *somebody* in the foreign state knew of the claim." *See id.* at 618 (emphasis in original). It is precisely for this reason that Semtek cannot establish substantial compliance with § 1608(b).

Indeed, as described in ISS's opening memorandum at page 25, the only evidence in the record regarding service is that a package allegedly containing the amended complaint and summons was delivered to 3 Mytischinskaya Ulitsa Building 16 in Moscow, Russia on

---

[5] Semtek has failed to identify any authority from the First Circuit establishing that substantial – rather than strict – compliance with the FSIA's service requirements is the appropriate test under § 1608(b). *Compare Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 394-95 (E.D. Va. 1984) ("Congress by enacting the Immunities Act intended the specific service of process requirements contained in the statute to be followed exactly recognizing the difficulties inherent in cross-cultural and cross-lingual litigation."); *Lippus v. Dahlgren Mfg. Co.*, 644 F. Supp. 1473, 1479 (E.D.N.Y. 1986) (requiring strict compliance with § 1608(b) service requirements); *LeDonne v. Gulf Air, Inc.*, 700 F. Supp. 1400, 1411 (E.D. Va. 1988) (holding that proper assertion of personal jurisdiction depends "on strict compliance with the FSIA's service rules.") Based on the logic of these cases, this Court should require strict compliance with the FSIA's service requirements and, for the reasons described in ISS's opening memorandum at pages 23 through 25, find the default judgment void for lack of jurisdiction based on Setmek's failure to serve ISS properly pursuant to § 1608(b).

December 10, 2009 and signed for by an unidentified individual. *See* Affidavit of Service (Dkt. No. 10), at Ex. B. Although this may be evidence that "somebody" in Russia received the documents, it falls short of establishing that Semtek provided actual notice of this lawsuit to an official at ISS with responsibility for responding to legal proceedings in a United States court.[6] *See Magness*, 247 F.3d at 618 (actual notice not established for purposes of § 1608(b) substantial compliance where "the return receipt for the service documents had been signed by somebody at the 'Russian Ministry of Culture/Russian State Diamond Fund.'") In these circumstances, Semtek cannot meet even the relaxed standard for substantial compliance with the service requirements of § 1608(b), and the default judgment is therefore void based on a lack of jurisdiction over ISS.

## III. The FSIA Commercial Activity Exception is Not Triggered by ISS's Current Business Activities

Semtek's opposition fails to address directly ISS's contention that it does not conduct any commercial activity in the United States that is sufficient to trigger the FSIA's commercial activity exception. *See* ISS Opening Memo., at p. 18. Rather, Semtek quibbles in a footnote that ISS may actually transact business with five, rather than four, companies in the United States. *See* Semtek Opp., at p. 20 n.8. This alleged discrepancy (which ISS disputes) is simply irrelevant to an analysis of the commercial activity exception.

"In construing the commercial activity exception, courts have required that a significant nexus exist between the commercial activity in this country upon which the exception is based

---

[6] The evidence submitted by Semtek to demonstrate its purported compliance with 28 U.S.C. § 1608(e) similarly is deficient. Section 1608(e) requires a copy of any default judgment entered against an agency or instrumentality of a foreign state to be "sent to the foreign state or political subdivision in the manner prescribed for service in this section." Again, however, the only evidence in the record is that counsel for Semtek "sent a United States Postal Service Global Express Guaranteed envelope to the Moscow and Zheleznagorsk offices of ISS" containing "a cover letter and English and Russian copies of Dkt. No. 26, Order for Default Judgment." *See* Supplemental Affidavit of John Fawcett (Dkt. No. 40-1), ¶ 26. Absent evidence that these packages were actually received by an ISS official with responsibility for responding to legal proceedings in the United States, this bald assertion is insufficient to carry Semtek's burden of establishing compliance with § 1608(e).

and a plaintiff's cause of action." *NYSA-ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 38, 38 (2d Cir. 1993). Here, Semtek does not allege, and cannot allege credibly, that ISS's current business activities – whether conducted with four or five U.S. companies – have a significant nexus to the allegations underpinning this lawsuit. The commercial activity exception cannot operate in these circumstances to override ISS's presumed FSIA immunity.

### IV. The Default Judgment Should be Vacated Under Rule 60(b)(3) Because it Was Unfairly Obtained by Semtek's Misrepresentations and Misconduct

Semtek's opposition mounts a two-pronged challenge to ISS's request to vacate the default judgment under Rule 60(b)(3). First, Semtek alleges that any misrepresentations were harmless because they did not prevent ISS from defending itself on the merits. Second, Semtek alleges that its submissions to this Court were, at minimum, based upon information that Semtek believed to be truthful. Neither argument is sufficient to avoid vacatur of the default judgment under Rule 60(b)(3).

#### A. Semtek's Misrepresentations and Misconduct Allowed it to Obtain the Default Judgment Unfairly

It is simply beside the point for Semtek to argue that ISS could have rebutted any misrepresentations in the record had it appeared in this lawsuit from the outset or that ISS was aware of the inaccuracies at the time of Semtek's filings. These arguments ignore, once again, that ISS's presumptive FSIA immunity would have led to dismissal of this lawsuit had Semtek not furnished this Court with misleading information regarding the applicability of the FSIA exceptions.

"Rule 60(b)(3) is designed to afford protection against judgments that are unfairly obtained rather than against judgments that are factually suspect." *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 22 (1st Cir. 2002). ISS's contention here is not that it was prevented from appearing to defend itself in this action. Rather, ISS's argument is that it *never should have had*

10

*to defend itself by virtue of its presumptive FSIA immunity*, and that Semtek was only able to overcome that immunity through misrepresentations and misconduct perpetrated in ISS's absence. This case is therefore distinguishable from the cases relied upon by Semtek, where alleged misrepresentations did not prevent litigants from fully and fairly preparing their case for Rule 60(b)(3) purposes because they had appeared and participated in litigation and could have rebutted any alleged misrepresentations contemporaneously.[7] There is no basis in law or fact for Semtek to allege that ISS was required to appear in this case, despite its undisputed presumptive immunity, simply for the purpose of correcting Semtek's misstatements.

B.      Semtek's Belief in the Truth of Mistaken Allegations is Irrelevant

Similarly unavailing is Semtek's contention that it is entitled to rely on its belief that the representations made to this Court were true. ISS is not required to prove that Semtek's misrepresentations were intentional in order to obtain relief under Rule 60(b)(3). Nor was ISS required to furnish Semtek voluntarily with information that might have been relevant to its motion for default judgment. Because Rule 60(b)(3) encompasses "misconduct" as well as misrepresentations, the First Circuit has held that it "does not demand proof of nefarious intent or purpose as a prerequisite to redress . . . [t]he term can cover even accidental omissions . . . depending upon the circumstances, relief on the ground of misconduct may be justified 'whether there was evil, innocent or careless, purpose.'" *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988). For purposes of this motion, therefore, it does not matter whether Semtek believed in

---

[7] *See United States v. One Rural Lot #11*, 93 Fed. Appx. 241, 243 (1st Cir. 2004) (denying Rule 60(b)(3) relief where "[defendant] litigated this case for approximately seven years, and he had ample opportunity to present his side of the story."); *Karak*, 288 F.3d at 21 (alleged misrepresentations in affidavits insufficient to justify relief under Rule 60(b)(3) where plaintiff "had at his beck and call the complete panoply of pretrial discovery devices" to "discover[] any misstatements and [lay] bare the facts prior to the entry of judgment."); *Ojeda-Toro v. Rivera-Mendez*, 853 F.2d 25, 29 (1st Cir. 1988) (denying Rule 60(b)(3) relief where plaintiff had appeared in lawsuit and had "timely access to information" that could have been used to oppose motion to dismiss); *Capizzi v. States Resources Corp.*, No. Civ.A.02-12319-DPW, 2005 WL 113679, at *7 (D. Mass. 2005) (alleged misrepresentations in affidavits insufficient to justify relief under Rule 60(b)(3) where default judgment entered against plaintiff who had initiated suit but failed to defend against counterclaim).

the truth of its representations or whether ISS possessed information that may have shed light on the veracity of those allegations. All that matters is that the default judgment assessed a $381 million liability on the basis of facts and representations that were false.

Here, such falsity exists. Semtek's protestations notwithstanding, it was inaccurate for Semtek to inform this Court that Merkuriy transferred its assets to NPO PM because ISS has introduced evidence – which Semtek now tacitly concedes it cannot rebut – that the shares of Merkuriy Telestat were sold to NEKST in August 2002. *See* ISS Opening Memo., at Section II.B. Similarly, Semtek's representation that the liabilities of Merkuriy could be imputed to NPO PM under Massachusetts law is misleading in light of the uncontroverted evidence ISS has now introduced into the record to demonstrate that Russian law does not recognize the concept of corporate successor liability. *See id.* at Section II.A. Moreover, ISS has shown that it was not a "successor" of Merkuriy as ISS's immediate predecessor, NPO PM, divested itself of its interest in Merkuriy before Merkuriy was granted a license to access any Loutch satellite for commercial purposes and before any alleged joint venture agreements had even been entered into between Merkuriy and Semtek.[8] *See id.* at pp. 7-11. Finally, Semtek's representations that a joint venture agreement existed between Semtek and Merkuriy are disproven by contemporaneous documentary evidence introduced into the record by Semtek itself which establishes that the joint venture negotiations never progressed past the preliminary stage. *See id.*, at Section II.C. In these circumstances, ISS is entitled to relief under Rule 60(b)(3) because it has identified misrepresentations and misconduct in the record that permitted Semtek to obtain the default judgment unfairly despite ISS's presumptive FSIA immunity.

---

[8] This absence of this essential factual basis to support a claim of successor liability (assuming Massachusetts substantive law were to apply) was explained to Semtek in writing by ISS First Deputy General Designer and General Director Viktor Kosenko, *see* Dkt. No. 17-6, yet Semtek willfully continues to mischaracterize the contents of the Kosenko Letter in opposing ISS' Motion to Vacate the Default Judgment. *See* Semtek Opp. (Dkt. No. 40), at pp. 29-30.

12

Respectfully submitted,

ACADEMICIAN M.F. RESHETNEV
INFORMATION SATELLITE SYSTEMS,

By its attorneys,


/s/ Benjamin M. McGovern
Ralph T. Lepore, III (BBO #294420)
Michael T. Maroney (BBO #653476)
Benjamin M. McGovern (BBO #661611)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
ralph.lepore@hklaw.com
michael.maroney@hklaw.com
benjamin.mcgovern@hklaw.com

Date: August 12, 2011

## **CERTIFICATE OF SERVICE**

  I, Benjamin M. McGovern, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 12th day of August, 2011.

                 /s/ Benjamin M. McGovern
                 Benjamin M. McGovern

Dated:  August 12, 2011

#10505613_v1