UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------------------x
SEMTEK INTERNATIONAL INCORPORATED,

                Plaintiff,            Civil Action No.:
                                              1:09-cv-10183-RWZ

  - against –

ACADEMICIAN M.F. RESHETNEV INFORMATION
SATELLITE SYSTEMS /AKA/ NPO PM,          **[LEAVE TO FILE GRANTED ON AUGUST 12, 2011]**

                Defendant.
-------------------------------------------------------------------------x

**SUR-REPLY TO ISS'S MOTION TO
VACATE THE DEFAULT JUDGMENT**

                Anthony Tarricone (BBO# 492480)
                Joseph P. Musacchio (BBO# 365270)
                KREINDLER & KREINDLER LLP
                277 Dartmouth Street Boston, MA 02116
                Telephone: (617) 424-9100
                Facsimile: (617) 424-9120
                atarricone@kreindler.com
                jmusacchio@kreindler.com

                - and –

                Marc S. Moller
                Brian J. Alexander, admitted *pro hac vice*
                KREINDLER & KREINDLER LLP
                750 Third Avenue
                New York, New York 10017
                Telephone: (212) 687-8181
                Facsimile: (212) 972-9432
                balexander@kreindler.com
                mmoller@kreindler.com

                *Attorneys for Plaintiff SEMTEK*

In light of the reply submitted by defendant Information Satellite Systems ("ISS"), it is evident that: (1) ISS had actual notice of Semtek's lawsuit against it and (2) ISS adopted a deliberate – if ill-advised – strategy to avoid the merits of this litigation by failing to appear and defend itself. Now, faced with this Court's February 11, 2011 default judgment against it, ISS, lacking any good cause whatsoever for its prior failure to appear, is seeking to indirectly challenge plaintiff's claims by raising them in the context of this Fed.R.Civ.P. 60(b) motion to vacate.

The United States judicial system, however, "depends … on the functioning of the adversary principle," and defaulting should not be lightly countenanced. *Alameda v. Secretary of Health, Ed. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980); *see also United States v. Western Elec. Co., Inc.,* 46 F.3d 1198, 1204 (D.C.Cir.1995) (the burden the defaulting party bears is a "heavy" one.) "Litigation decisions made by parties have consequences" that those parties must be prepared to face. *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 2 (1st Cir. 2001) (affirming district court's denial of Rule 60(b) motion to vacate.) To consciously disregard judicial proceedings and then seek "Rule (60)(b)['s] … 'extraordinary relief' [which is] reserved for 'exceptional circumstances,' given the countervailing interest in the finality of such orders," is a risky strategy indeed. *Id.*, p. 5. ISS's deliberate, contumacious behavior does not constitute "exceptional circumstances" and does not warrant the "extraordinary relief" of Rule 60(b); ISS has failed to satisfy its heavy burden and this Court should therefore deny its motion to vacate the February 11, 2011 default judgment.

### 1.  ISS Intentionally Chose Not to Defend Itself

ISS made a strategic decision not to appear and defend itself on the merits in this matter, relying on what it claims was its "reasonable belief that it was immune from suit under the

FSIA." ISS Reply Memorandum, p. 8.  But, clearly, the FSIA does not relieve a foreign instrumentality of the duty to defend itself, as default judgments against foreign sovereigns are specifically anticipated by the act. *See* 28 U.S.C. § 1608(e).  Were foreign instrumentalities free to ignore the duty imposed on all other parties to litigation in this country (including the federal government) and simply fail to appear because they believed jurisdiction was lacking with no consequences, default judgments would be rendered meaningless, as the foreign defendants could simply repeatedly default with no adverse effect.  The existence of a mechanism by which a plaintiff may obtain a default judgment against a defendant entitled to invoke the protections of the FSIA is plain evidence that the intentional disregard of judicial process in this country has real and substantial risks that cannot be circumvented simply by putting in a belated appearance.

The limited protections available to foreign sovereigns are not absolute and have no constitutional basis.  It is only through an act of legislative grace – Congress's 1976 codification of a limited version of common law sovereign immunity in the Foreign Sovereign Immunity Act – that foreign governments are afforded some limited protection from lawsuits involving the state's public acts under a theory referred to as the restrictive principle of sovereign immunity. *See* H.R. Rep. 94-1487, 1976 U.S.C.C.A.N. 6604, 6605, 1976 WL 14078, *2 ("Under the restrictive theory of protection embraced by the FSIA, the immunity of a foreign state is restricted to suits involving a foreign state's public acts") (internal quotation marks omitted). Reflecting this restrictive theory, "[t]he 'commercial activity' exception of the FSIA withdraws immunity in cases involving essentially private commercial activities of foreign sovereigns that have an impact within the United States." *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 241 (2d Cir. 1994) (district court's refusal to set aside default judgment was not an abuse of discretion).  The FSIA is thus simply a statutory grant of limited protection to foreign sovereigns

2

and is expressly not available to instrumentalities engaging in commercial activities. ISS's argument with respect to the FSIA is only that the court erred in concluding it was a commercial actor. But, as set forth in Semtek's Opposition Memo., Section III.A.i, pp. 10 – 13, any such error would not render the judgment void for Rule 60(b)(4) purposes, as that determination of the status of ISS as a commercial actor was a question of substantive law that is not a ground for vacating a default judgment.[1] *See First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983); *Meadows v. Dominican Republic*, 628 F.Supp. 599 (N.D.Cal. 1986), *aff'd* 817 F.2d 517 (9th Cir.), *cert. denied*, 484 U.S. 976 (1987).[2]

Semtek initiated this suit against ISS asserting that ISS was the alter ego and/or successor of Merkuriy and relying on the undisputed fact that ISS is and continues to retain the right to

---

[1] To support its Rule 60(b)(4) argument, ISS relies on *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543 (D.C.Cir. 1987). In that case, however, the vacatur of the default judgment was based largely on the district court's conclusion that the conduct at issue was public in nature; the appellate court, disagreeing on the facts, remanded the case for further consideration. *Practical Concepts*, 811 F.2d at 1551. Further, other courts have reached opposite conclusions regarding the risks presented by a defendant's decision to rely on the FSIA. *See, e.g., Commercial Bank of Kuwait*, 15 F.3d at 241 (affirming district court's denial of motion to vacate default judgment because defendant's conduct fell within commercial activities exception). Last, the defendant in *Practical Concepts* was a foreign state, not an instrumentality, and it is clear from both the statutory language and the caselaw interpreting it that foreign states are afforded more rigorous protections than instrumentalities of those states. *Compare* 28 U.S.C. § 1608(a) (service on a foreign state) *with* 28 U.S.C. § 1608(b) (service on an instrumentality); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148, 153-154 (D.C.Cir.1994) (in contrast to service on a state, when considering service on an instrumentality "[t]he authorities generally hold that section 1608(b) may be satisfied by technically faulty service that gives adequate notice to the [defendant]"), *cert. denied,* 513 U.S. 1150 (1995).

[2] ISS attempts to distinguish the *Meadows* decision, in which a defaulting foreign sovereign made an unsuccessful Rule 60(b)(4) challenge to a default judgment, by relying on the fact that the court there engaged in a Rule 60(b)(4) review. The point is not, however, whether the *Meadows* court applied Rule 60(b)(4) in rejecting the defendant's claims, but whether the court granted the defaulting foreign sovereign Rule 60(b)(4) relief. It did not. Nor, for reasons similar to those set forth in *Meadows*, should this Court grant ISS Rule 60(b)(4) relief. ISS's reliance on *Gregorian v. Izvestia* is similarly misplaced, as the quotation ISS relies upon concerns only the defendant's request for Rule 60(b)(6) relief, not a Rule 60(b)(4) analysis (and, indeed, the Ninth Circuit granted relief only pursuant to Rule 60(b)(6) in the *Gregorian* case).

commercially market excess capacity on the Loutch satellite system. As set forth in its pleadings, Semtek relied on the commercial activities exception to the FSIA, arguing that ISS, either because of its own acts[3] or because the acts of what Semtek contends were ISS's alter egos/predecessors was conducting itself as a commercial actor. Semtek presented facts and arguments in support of its position that the commercial activities exception applied and that ISS was therefore subject to suit here pursuant to 28 U.S.C. § 1605(a)(2). ISS then made a "free, calculated, and deliberate" choice not to appear to defend itself. *Zang*, 248 F.3d at 6, quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950). This Court, accepting Semtek's arguments, entered a default judgment against ISS, reciting statutory subsections of the FSIA. *See* Default Judgment, Dkt. No. 26. Even if this Court mistakenly interpreted material facts regarding ISS's commercial activities (for example, with respect to its responsibility for the prior commercial acts of NPO PM or its status as an alter ego/successor of the prior judgment debtor), such mistakes fall within the category of "errors" and are not the equivalent of "a plain usurpation of power constituting a violation of due process." *Indianapolis Life Ins. Co. v. Herman*, 204 Fed.Appx. 908, 910 (1st Cir. 2006). "A judgment is not void simply because it is or may have been erroneous; it is void only if, from its inception, it was a legal nullity." *Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir. 1995). This Court did not act with a total lack of jurisdiction and, thus, ISS cannot find refuge for its deliberate disregard of these proceedings in Rule 60(b)(4).[4]

---

[3] ISS appears to concede that Semtek is, at a minimum, entitled to discovery on its commercial contacts with the United States and relationship of those activities to the marketing and development of commercial satellites, which are at the heart of Semtek's claims.

[4] ISS's characterization of Semtek's position as arguing that Rule 60(b)(4) may not even be considered here is both incorrect and irrelevant. *See* ISS Reply, pp. 1 – 2. Because, even if wrongly decided, the default judgment does not fall within Rule 60(b)(4)'s "narrowly constricted" definition of "void," which, "although seemingly incongruous," means that "a federal court judgment is almost never void because of lack of subject matter jurisdiction." *Kansas City So. Railway Co.*, 822 F.2d 822, 825, fn 5 (8th Cir. 1980).

Furthermore, ISS's new request for Rule 60(b)(6) relief on the alleged "equitable" grounds that this Court erred in concluding that ISS was a commercial actor for FSIA purposes is both waived and without merit. First, arguments raised for the first time in a reply brief are procedurally barred and this Court may therefore not even consider the argument that errors in concluding that ISS was a commercial actor constitute an equitable ground for vacatur under Rule 60(b)(6). *See Cahoon v. Shelton*, --- F.3d ---, 2011 WL 2937424, *11, fn 8 (1st Cir. July 11, 2011) (an argument that "appears for the first time in [a] reply brief … is … waived"); *Noonan v. Wonderland Greyhound Park Realty, LLC*, 723 F.Supp.2d 298, 349 (D.Mass. 2010) ("The purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum.") Second, the argument is utterly without force. The "discretionary power granted by Rule 60(b)(6) is not for the purpose of relieving a party from … 'free, calculated, and deliberate' choices made as part of a strategy of litigation." *Zang*, 248 F.3d at 6, quoting *Ackermann*, 340 U.S. at 198. "The law presumes that parties will make choices to protect their legal interests, even though those choices may at times involve a calculated risk. Where a party makes a considered choice, though it may involve some calculated risk, he 'cannot be relieved of such a choice because hindsight seems to indicate to him' that, as it turns out, his decision was 'probably wrong.'" *Id.* Whatever reasons ISS had for failing to appear, including a belief that it was protected by the FSIA, having knowingly and strategically done so, it cannot seek the extraordinary relief for extraordinary circumstances provided by Rule 60(b)(6).

### 2. Service was Proper and ISS Had Actual Knowledge of the Litigation

Remarkably telling in ISS's reply memorandum is defendant's utter silence with respect to actual knowledge of the commencement of this litigation. Nowhere does ISS contest that its directors, officers and/or executives actually received and had full knowledge of Semtek's

5

lawsuit against it.  Rather they tacitly admit to receiving the complaint, considering it and then deliberately deciding not to respond to it. This acknowledgement of actual notice is powerful evidence that the method of service that this Court approved and that Semtek employed followed both the letter and the spirit of the Foreign Sovereign Immunities Act ("FSIA"), accomplishing the statute's purpose of providing notice to the foreign instrumentality.

Semtek served ISS precisely according to the method set forth in 28 U.S.C. § 1608(b)(2)(B).  In a "manner reasonably calculated to give actual notice" (because the method had proved successful at reaching the directors and officers of ISS in the past), Semtek sent original and translated versions of all filings by a "form of mail requiring a signed receipt" (as United States Postal Service Global Express Guaranteed Service will only deliver mail if a recipient is present and signs for the documents) "to be addressed and dispatched by the clerk of the court to the … instrumentality to be served" (having provided all pleadings, translations and packages to the clerk of the court, Semtek simply followed the clerk's direction and, as the clerk's conduit, took those materials to the commercial mailing agency).  All of this is attested to under oath by a party with first-hand knowledge of the service history in this matter in the supplemental affidavit of John Fawcett affidavit. *See* Supplemental Affidavit of John Fawcett ("Suppl. Fawcett Aff."), Dkt. No. 40-1 and Exhibit 1 thereto, Dkt. No. 40-2.  ISS cannot plausibly assert that Semtek failed to satisfy the service requirements of 28 U.S.C. § 1608(b) and its feeble suggestion that the signed receipt of the pleadings packages is insufficient is simply an argument that the service requirements of the FSIA are themselves insufficient.  If ISS wants the FSIA to require proof that pleadings are received "by an … official with responsibility for responding to legal proceedings in the United States," ISS Reply, p. 9, fn. 6, it should take up

this argument with Congress.[5]  Semtek complied with the requirements, ISS had actual notice and any policy argument regarding who should have to sign for receipt of pleadings is clearly not a grounds for vacating the default judgment.

Recognizing that it has no real argument to service in this case, ISS cites to three 1980's district court cases to support its claim that strict compliance is required when serving an instrumentality under 28 U.S.C. § 1608(b).  First, Semtek strictly complied with the FSIA's service requirements, and thus those cases are inapplicable.  Second, in none of those cases did the foreign instrumentalities fail to assert that they did not have actual notice of the complaint. *See Unidyne Corp. v. Aerolineas Argentinas*, 590 F.Supp. 391 (E.D.Va. 1984), (defendant was "not an 'agency or instrumentality'" but, rather, qualified as a foreign state or political subdivision thereof, and thus section 1608(b) was inapplicable); *Lippus v. Dahlgreen Mfg. Co.*, 644 F.Supp. 1473 (E.D.N.Y. 1986) (plaintiff acknowledged it did not satisfy section 1608(b), but argued that service under state law was sufficient); *LeDonne v. Gulf Air Inc.*, 700 F.Supp. 1400 (E.D.Va. 1988) (plaintiff "conceded her failure to serve, or even attempt to serve" the foreign defendant).  Last, as the cases in Semtek's opposition memorandum make clear, when facing service on an instrumentality, as opposed to a foreign state or political subdivision or agency thereof, substantial, and not strict, compliance is the standard.  Here, plaintiff complied with the

---

[5] ISS suggests that, though it is indisputably an "instrumentality," plaintiff was obligated to serve the default judgment pursuant to 28 U.S.C. § 1608(e).  Plaintiff did, however, serve the default judgment on ISS.  Further, the circuits are split on whether instrumentalities, as opposed to foreign states or their political subdivisions, must be served with the default judgment. *Compare Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 109 (6th Cir. 1995) (interpreting section 1608(e) as requiring service of default judgment on instrumentality) *with Straub v. AP Green, Inc.*, 38 F.3d 448, 454 (9th Cir. 1994) (section 1608(e) requires service of default judgment <u>only</u> when defendant is a foreign state or political subdivision thereof; not when defendant is an instrumentality).  Even if the First Circuit were to adopt the stricter view regarding service, plaintiff satisfied section 1608(e)'s requirements, as it served the default judgment exactly in the manner specified for service on an instrumentality.

statute's service requirements <u>and</u> the defendant had actual notice. In light of this, no ground for vacating for improper service exists.

### 3. <u>Semtek Provided this Court With Sufficient Evidence For a Default Judgment</u>

Semtek presented sufficient evidence to support the default judgment and ISS's attempts to litigate the merits of this action by way of a Rule 60(b)(3) motion should not be countenanced. Semtek argued to the Court that ISS was responsible for the commercial activities of its alter ego/predecessor, which arose "from contracts with a U.S. company for marketing and development services to be primarily performed in the U.S. in order to provide transmission services in the U.S. market" that "trigger[ed] the commercial exception under the [FSIA] as such contracts are presumptively commercial," citing 28 U.S.C. § 1605(a)(2). Semtek Default Memo. Of Law, pp. 3 – 4. It supported those allegations with substantial evidence. *See* Affidavit of John Fawcett ("Fawcett Aff."), Dkt. No. 17-3, Exhibits 2 – 41.

A party's status as an instrumentality of a foreign state does not preclude the imposition of a default judgment against it when that party disregards the judicial process. A default judgment may be entered against the foreign defendant upon the claimant's establishment of a right to relief by evidence "satisfactory to the court." The "satisfactory to the court" standard is identical to that established by Fed.R.Civ.P. 55(e) with respect to default judgments against the United States. *See* H.Rep. 94-1487, 25 – 26, 1976 U.S.C.C.A.N. 6625 ("This is the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F.R.Civ.P.") In light of this language, it is clear that foreign sovereigns have a duty and an obligation to appear in court and defend themselves. *See Alameda v. Secretary of Health, Educ. & Welfare*, 622 F.2d 1044, 1047 – 48 (1st Cir. 1980) (wording in Fed.R.Civ.P. 55(e) concerning default judgments against the United States identical to that in the FSIA concerning default

judgments against foreign sovereign defendants does not prohibit entry of default and does not relieve the defendant from a duty to defend); *see also Wachsman ex rel. Wachsman v. Islamic Republic of Iran*, 537 F.Supp.2d 85, 91 (D.D.C. 2008) (in finding plaintiff satisfied FSIA's default judgment standard, noting that the statute's "'satisfactory to the court' standard is identical to the standard for entry of default judgments against the United States in Federal Rule of Civil Procedure 55(e)).

This Court had all of the evidence and arguments Semtek presented in reaching its decision and the fact that the order granting Semtek's motion did not recite back all of plaintiff's arguments and language is of no moment. Semtek provided this Court with a factual basis for asserting jurisdiction over ISS pursuant to the commercial activities exception of the FSIA. The Court's order incorporated those unopposed facts and arguments set forth in Semtek's memorandum of law and made at the hearing on the motion. ISS may now regret having failed to appear in this action to make its own arguments against the exercise of jurisdiction, but that regret is not a basis for upsetting the default judgment.

### 4. Semtek Made No Misrepresentations

Plaintiff has consistently relied on the transfer of Merkuriy's only real asset – the right to commercially exploit excess capacity on the Loutch satellites – along with other evidence that the entities were inextricably intertwined as proof that ISS was the alter ego/successor of Merkuriy. *See* Amended Complaint, Dkt. No. 7, ¶¶ 18 – 34; Semtek's Default Memo., Dkt. No. 17, pp. 3 – 5. In making a Rule 60(b)(3) motion to vacate, ISS relies solely on judgment debtor Pyotr Sivirin's self-serving and specious affidavit stating that no transfer of shares took place as "proof" of Semtek's misrepresentations. But Semtek never represented that NPO PM or ISS received shares or stock certificates of Merkuriy Telestat. Rather, Semtek's argument is and has

always been that NPO PM/ISS's pervasive control over Merkuriy's key asset, along with the other indicia of alter ego/succession (such as the entities having the same officers, location and assets) established that the entities were mere alter egos or that ISS was the successor-in-interest of Merkuriy. It supported that argument with substantial evidence of this relationship and its assertions in that regard do not constitute misrepresentations. *See* Fawcett Aff., Dkt. No. 17-3, ¶¶ 2 – 41.[6]

Further, ISS has refused to produce documentation supporting its assertion regarding a transfer of shares, despite Semtek's fruitless attempts to obtain such documentation from it. *See* Exh. 1 to Suppl. Fawcett Aff., Dkt. No. 40-2 (correspondence from Brian J. Alexander to V.E. Kosenko, General Director of ISS). The fact that ISS has repeatedly refused to provide even a single document evidencing a stock transfer (and continues to this day to fail to provide any such documents) mightily undermines its claim that a stock transfer took place and bolsters plaintiff's belief that this purported "transfer" was a sham. ISS now suggests that the "NEKST" entity bought Merkuriy's shares and this purchase precludes a finding of liability against ISS, yet it has provided no documentation to support that claim. This is another disingenuous attempt to improperly return to the merits of the underlying litigation under the guise of a Rule 60(b)(3) "misrepresentation" argument. The time for ISS to make these direct arguments has passed. Even if ISS's assertions regarding a stock transfer to NEKST were true, however, Semtek established alter ego/successor liability on the basis of ISS's pervasive control and inextricable intertwining with Merkuriy. *See generally*, Semtek Default Memo., Dkt. No. 17-1, and exhibits

---

[6] Nor did Semtek make any misrepresentations regarding the applicable legal standards to be applied. As noted in our prior brief, Massachusetts has the greatest interest in the outcome of this litigation and, even now, whether Russian law applies and what Russian law recognizes are disputed questions that should have been litigated directly and cannot be revisited in the context of a Rule 60(b)(3) motion. *See* Semtek Opposition Memo., Section III.B.i.b, pp. 33 – 35.

thereto. Further, it is wholly illogical to suggest that a party is obligated to present evidence its adversary has withheld from it and ISS's audacious claim that Semtek was obligated to inform this Court of stock transfers from Merkuriy, despite the fact that ISS steadfastly refused to honor Semtek's repeated and clear requests for any such materials is without any merit.

Last, ISS continues to misapprehend Rule 60(b)(3), which does not require a party seeking a default judgment to present the defaulting adversary's legal and factual arguments. Relief under Rule 60(b)(3) is available only if the defaulting party can establish by clear and convincing evidence "(1) that the adverse party engaged in fraud or other misconduct, <u>and</u> (2) that <u>this misconduct prevented the moving party from fully and fairly presenting his case</u>." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005) (emphasis added); *see also Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 286 (1st Cir. 1993) (to prevail on Rule 60(b)(3) motion a movant must demonstrate that alleged misrepresentation prevented her from fully and fairly presenting her case). "Misrepresentations can have this effect only when a party <u>did not have knowledge of the alleged inaccuracies</u>." *Washington v. State Street Bank & Trust Co.*, 14 Fed.Appx. 12, 15 (1st Cir. 2001) (affirming denial of Rule 60(b)(3) relief). Semtek denies making any misrepresentations but notably here, all of the purported "misrepresentations" that ISS cites in support of its request for Rule 60(b)(3) relief regarding the relationship among ISS, NPO PM and Merkuriy were laid before it prior to commencement of this litigation in the communication between plaintiff's counsel and ISS's General Director, Viktor Kosenko. *See* Exhibit 1 to Supplemental Fawcett Aff., Dkt. No. 40-2. These facts and the legal basis for liability were clearly set forth in plaintiff's complaint and were by its own admission, known to ISS many months prior to Semtek's filing of a complaint and subsequent application for a default judgment. *See* Amended Complaint, Dkt. No. 7, ¶¶ 18 – 34. Given the notice ISS had of

11

Semtek's arguments regarding the corporate relationships and given that those arguments had no bearing whatsoever on ISS's ability to fully and fairly present its case, ISS has utterly failed to establish any entitlement to Rule 60(b)(3) relief.

## CONCLUSION

For all of the reasons set forth above, ISS has not met its burden establishing extraordinary grounds for vacating the default judgment and for the reasons set forth herein and in plaintiff's opposition memorandum, Semtek respectfully requests that this Court deny ISS's motion to vacate the default judgment.

Dated: August 12, 2011
       Boston, Massachusetts

Respectfully submitted,

KREINDLER & KREINDLER LLP

  /s/ Brian J. Alexander           ___

Brian J. Alexander, admitted *pro hac vice*
Marc S. Moller
750 Third Avenue
New York, New York 10017
Telephone: (212) 687-8181
Facsimile: (212) 972-9432
balexander@kreindler.com
mmoller@kreindler.com

- and –

Anthony Tarricone (BBO# 492480)
Joseph P. Musacchio (BBO# 365270)
277 Dartmouth Street Boston, MA 02116
Telephone: (617) 424-9100
Facsimile: (617) 424-9120
atarricone@kreindler.com
jmusacchio@kreindler.com

*Attorneys for Plaintiff SEMTEK*

## **CERTIFICATE OF SERVICE**

      I, Brian J. Alexander, the undersigned counsel for Semtek, hereby certify that on August 12, 2011 I electronically filed the foregoing Sur-Reply through this Court's ECF/CM system, which will serve copies of those documents to all counsel of record registered with this Court's electronic filing and notification system.

                                          /s/ Brian J. Alexander
                                          Brian J. Alexander