UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10183-RWZ

SEMTEK INTERNATIONAL INC.

v.

INFORMATION SATELLITE SYSTEMS

ORDER

March 9, 2012

ZOBEL, D.J.

In April 2000, Judge Lindsay entered a default judgment in the amount of $381,396,000 plus interests and costs for plaintiff against Merkuriy LTD ("Merkuriy"), a Russian company engaged in the business of commercializing satellite capacity, and Pyotr Sivirin ("Sirvirin"), a Russian citizen and Executive Director of Merkuriy, when they failed to defend against an action by plaintiff.  Plaintiff alleged, inter alia, that Merkuriy and Sivirin breached a contract that granted it the right to market certain satellites commercially.  Plaintiff spent a significant portion of the next ten years attempting to collect the judgment, but aside from recovering $15,000 in cash and stock from a third-party creditor of Merkuriy, its efforts were to no avail.

In February 2009, Plaintiff brought this action against Information Satellite

Systems ("ISS")[1], a company wholly owned by the Russian Federation and in the business of designing, manufacturing, and operating satellite systems, alleging that Merkuriy's liabilities were "merged with or transferred to its alter ago and/or successor in interest... ISS." Docket # 17 at 6.  ISS did not appear to defend the suit and in August 2010 plaintiff filed a motion requesting default judgment, which was allowed.  Four months later, in June of 2011 Semtek filed a notice of appearance and now seeks to vacate that judgment.

## I. Motion to Set Aside Default Judgment

Defendant seeks to set aside the judgment under Fed. R. Civ. P. 60(b) on the grounds that (1) it is void because the court did not have jurisdiction to enter the judgment by virtue of ISS' immunity under the Foreign Sovereign Immunities Act ("FSIA") and for improper service; (2) plaintiff procured that judgment through misrepresentations of fact to the court; and (3) the interest of justice so requires.

Semtek responds first that defendant is not permitted to collaterally attack findings of fact that served as the basis for subject matter jurisdiction. Second, even if jurisdiction was revisited, under the commercial activities exception of the FSIA, ISS is not immune from suit.  Third, Semtek asserts that ISS' arguments that plaintiff made misrepresentations to the court amount to disputes of fact that defendant was permitted to challenge in the first instance but cannot now raise in a collateral proceeding. Finally, it argues that the interests of justice do not require vacature of the default

---

[1] Plaintiff contends it is also known as "Academician M.F. Reshetnev Information Satellite Systems," "ISS-Reshetnev Company," "Academician M.F. Reshetnev Nauchno-Proizvodstvennoe Obiedinenie Prikladnoi Mekhaniki" and "NPO PM."

judgment.

## II. Standard

Fed. R. Civ. P 60(b) provides:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>(1) mistake, inadvertence, surprise, or excusable neglect;
>(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>(4) the judgment is void;
>(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>(6) any other reason that justifies relief.

Defendant relies primarily on Subsection (b)(4) and alternatively on Subsections (3) or (6).

## III. Analysis

### A.   Is the Default Judgment "Void" for Lack of Subject Matter or Personal Jurisdiction Under Fed. R. Civ. P. 60(b)(4)?

Although courts generally have discretion to grant Fed. R. Civ. P. 60(b) motions, "if the judgment is void the district court has no discretion but to set aside the entry of default judgment." Sea-Land Service, Inc. v. Ceramica Europa II, Inc., 160 F.3d 849, 852 (1st Cir. 1998), citing Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 28 (1st Cir. 1988). The First Circuit "has established a high bar for [ ] vacating a judgment for lack of subject-matter jurisdiction. ... [A] motion for relief from an unappealed

3

judgment alleged to be void for lack of subject-matter jurisdiction may succeed if the rigorous standard for such relief is met... [the standard is whether the challenged order] was a complete nullity and without legal effect." Fafel v. Dipaola, 399 F.3d 403 (1st Cir. 2005).  Thus, when a movant seeks vacature on Rule 60(b)(4) grounds, it must establish conclusively that no jurisdictional basis existed for the underlying action, such that the suit from inception was a nullity and without legal effect. Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972).

### 1.  Subject Matter Jurisdiction Under the FSIA

District courts have original jurisdiction of any non-jury civil action against a "foreign state" as to any claim for which the sovereign is not entitled to immunity under 28 U.S.C. §§ 1605-07 of the FSIA. 28 U.S.C. §1330(a).  A "foreign state" under the FSIA includes a political subdivision of a foreign state or an agency or "instrumentality of a foreign state." 28 U.S.C. § 1603(a).  An "instrumentality of a foreign state" includes any entity which is (1) "a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by foreign state or political subdivision thereof" and (3) is not "a citizen of the State of the United States ... nor created under the laws of any third country." 28 U.S.C. § 1603(b).

Section 1605 provides in relevant part that a foreign state shall not be immune from the jurisdiction of the court of the United States or the States in any case where (1) "the foreign state has waived its immunity either explicitly or by implication ... [or] (2) the action is based on a commercial activity carried on in the United States by the

foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. §§ 1605(a)(1)-(2).

Here, the parties do not dispute that ISS is an instrumentality of the Russian government. Thus, the relevant inquiry is whether ISS is entitled to sovereign immunity or whether one of the enumerated FSIA § 1605 exceptions apply.

Plaintiff maintains that the commercial activity exception of § 1605(2) applies to ISS because the commercial acts of Merkuriy (i.e., the negotiation and formation of the Merkuriy-Semtek contract) are imputed to ISS, as an alter ego or successor in interest, and because those acts had a direct effect in the United States. Additionally they contend that ISS waived its sovereign immunity under §1605(1) through the very act of acquiring Merkuriy's liabilities. Both of plaintiff's theories of jurisdiction are necessarily premised on ISS' assumption of Merkuriy's liabilities; therefore, whether ISS is entitled to sovereign immunity depends on whether ISS actually assumed Merkuriy's liabilities either as a successor in interest or by virtue of alter ego status.

ISS now contends that neither it nor its predecessor entity, "Academician M.F. Reshetev Nauchno-Proizvodstennoe Obiedinenie Prikladnoi Mekhankiki" ("NPO PM"), ever had any interest in Merkuriy sufficient to create either alter ego or successor-in-interest status. It notes that upon the founding of Merkuriy, NPO PM only owned approximately 13.95% of the outstanding participatory shares of the company. It points

to a "presidential edict" that forbade national enterprises such as NPO PM from investing in trade companies and asserts that, as a result, NPO PM divested itself of its shares of Merkuriy which were later acquired by "Trade Union No. 290." Docket # 35 at 8.  On January 29, 1999 Merkuriy was reorganized into a limited liability company known as "Merkuriy Telestat" which, on June 7, 2008, was liquidated and excluded from the register of Companies of the Russian Federation. Prior to its liquidation all shares were sold to "NEKST Ltd." ("NEKST"). Id.   Although on March 3, 2008 NPO PM was reformed under Russian Federation law into defendant ISS as a joint stock company wholly owned by an agency of the Russian Federation, ISS alleges that "at the time of the sale of Merkuriy Telestat to NEKST, NPO PM had not owned any interest in Merkuriy for ten years" and that "[n]o assets or operations of Merkuriy were transferred or absorbed by NPO PM." Id.

 Plaintiff asserts, as it did when moving for default judgment, that NPO PM created and initially owned Merkuriy, and that thereafter, NPO PM installed its own executives to head Merkuriy.  It points out that judgment debtor Pyotr Sivirin, NOP PM's CEO, was also Merkuriy's President, that Merkuriy's company headquarters was located at the same address as NPO PM's office complex, and that agreements were executed on behalf of both Merkuriy and NPO PM on NPO PM letterhead.  Further, it states that the assets transferred when NPO PM merged into ISS included the right to market excess communications on NPO PM's satellites, which was the cornerstone of the Semtek-Merkuiry agreement, that ISS now lists Merkuriy and NPO PM's former clients as its own and continues to market the same satellite at issue in the Merkuriy-

Semtek agreement for commercial use at the same location identified in the agreement.

In short, the parties vigorously dispute whether NPO PM is the alter ego of or successor in interest to Merkuriy. The parties also dispute ISS' current commercial contacts in the United States, Merkuriy's prior commercial contacts with the United States during the formation of the Semtek-Merkuiry agreement, and what law should be used to determine ISS' alter ego status. ISS also raises several substantive defenses apart from sovereign immunity.

Although defendant now appears and presents evidence that NPO PM enjoyed only a minor ownership interest in Merkuriy, which was divested ten years before it was liquidated and no operations or assets of Merkuriy were transferred or absorbed by NPO PM, this proffer is sufficient only to create a fact issue on the question of ISS' alter ego status. It does not, especially in light of plaintiff's factual contentions, conclusively establish ISS' immunity as a sovereign under the FSIA as a matter of law. Therefore, ISS does not meet its high burden in establishing that the prior default judgment is void pursuant to Fed. R. Civ. P. 60(b)(4) on subject matter jurisdiction grounds.

### 2. Personal Jurisdiction Under the FSIA

Personal jurisdiction over a foreign state exists as to every claim for relief over which the district courts have jurisdiction under § 1330(a) if service has been made under § 1608 of the FSIA. 28 U.S.C. § 1330(b). "The FSIA makes the statutory aspect of personal jurisdiction simple: subject matter jurisdiction plus service of process equals personal jurisdiction," Seetransport Wiking Trader v. Navimpex, 989 F.2d 572, 579 (2nd Cir.1993). Thus, either improper service or lack of subject matter jurisdiction can

defeat personal jurisdiction under the FSIA.  Defendant challenges both. With respect to the later it asserts that service of process was never perfected in accordance with the FSIA.

### a. Service of Process

Section 1608(b) provides that service on an agency or instrumentality of a foreign state shall be made:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or
> (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>> (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
>> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>> (C) as directed by order of the court consistent with the law of the place where service is to be made.

While service on a "foreign state" under FSIA § 1608(a) must be accomplished in accordance with standard of "strict compliance," service on an "agency or instrumentality" of a foreign state under § 1608(b) requires only "substantial compliance." Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 153-54 (D. C. Cir. 1994) (collecting cases).

Plaintiff asserts that it effectuated service under § 1608(b)(3)(B). Service under § 1608(b)(3)(B) is permitted when service under §§ 1608(b)(1) and (2) cannot be made

8

and it is "reasonably calculated to give actual notice." It requires that "delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state" be made "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served."

On August 3, 2009, plaintiff moved for leave to serve defendant the summons and complaint pursuant to § 1608(b)(3)(B). In its motion plaintiff noted that there was no prior agreement for service between it and defendant and that the Russian Federation does not apply the "Hague Convention," the alleged applicable international convention under § 1608(b)(2), with respect to the United States. Docket # 4. Further, on March 3, 2009, plaintiff wrote a letter to ISS using the address "52 Lenin St. Zheleznagorsk" inquiring whether ISS had an agent in the United States authorized to receive service. Id. at Ex. A. ISS responded to this inquiry on April 22, 2009, on ISS letterhead that listed its address as "52 Lenin St. Zheleznagorsk" but did not identify an agent. The court granted plaintiff's motion on August 7, 2009. On August 12, 2009, plaintiff provided to the clerk of court two packages containing the complaint and summons both in English and Russian, with the request that they be sent (one to the St. Zheleznagorsk address and the other to a separate known address of ISS in Moscow). The clerk of court returned the package to plaintiff's counsel for onward mailing.[2]

---

[2] Plaintiff sought leave to file the amended complaint in the same manner as described, which was granted, and the amended complaint was so served on December 10, 2009.

Defendant complains in relevant part that the documents "were not 'addressed and dispatched by the clerk of the court' as required by 1608(b)(3)(B)" and that "Semtek has not established that its attempted service was 'reasonably calculated to give actual notice.'" Docket # 35 at 25.  It argues "[a]bsent evidence regarding the identity of the person signing for the package, or any indication that the summons itself was signed, Semtek's attempt at service was not reasonably calculated to give ISS actual notice..." Id.

Semtek's method of service strictly complied with § 1608(b)(3)(B) and also met the lower threshold of "substantial compliance." First, because ISS had previously corresponded with plaintiff from the St. Zheleznagorsk address, mailing to this address was reasonably calculated to give actual notice to ISS.  Inquiry into the identity of the recipient or confirmation that the summons was signed is not required by § 1608(b)(3)(B).  Such post-hoc activity does not call into question whether plaintiff's method was, at inception, calculated to give actual notice.  Second, the fact that plaintiff's counsel effectuated the mailing of the documents and the clerk of court did not "address[] and dispatch[]" the package is insignificant.  Plaintiff's counsel was acting at the direction of the clerk of court and was for this limited purpose acting as her agent. However, even if the technicality raised by defendant were enough to defeat strict compliance, plaintiff's procedure passes muster under the more lenient "substantial compliance" standard applicable to agencies or instrumentalities, such as ISS. Substantial compliance only requires "actual notice." Magness v. Russian Federation, et al., 247 F.3d 609, 617 (5th Cir. 2001) ("vast majority of the case law

does support a holding that substantial compliance under section 1608(b), coupled with actual notice, can suffice to meet the statutory service requirements for instrumentalities of a foreign state"). For the reasons explained above regarding the St. Zheleznagorsk address, defendant had actual notice of the mailing and therefore plaintiff not only strictly complied but also substantially complied with the service requirements of § 1608(b)(3)(B). See Straub v. A P Green, Inc., 38 F.3d 448, 453 (9th Cir. 1994) (failure to dispatch complaint by clerk of court did not deprive the district court of jurisdiction under substantial compliance test).

Defendant next urges vacature, in the interest of justice, under the catch-all provision of Fed. R. Civ. P. 60(b)(6).

### B. Must the Default Judgment Be Vacated Pursuant to Fed. R. Civ. P. 60(b)(6)?

A motion to set aside a default judgment under Fed. R. Civ. P. 60(b)(6) is "left to the sound discretion of the district court ... [A]ppellate courts will not reverse the district court's decision unless clearly wrong." Cutting v. Town of Allenstown, 936 F.2d 18, 21 (1st Cir. 1991). "This subsection gives the courts ample power to vacate judgments whenever appropriate to accomplish justice." Jackson v. People's Republic of China, 794 F.2d 1490, 1494 (11th Cir. 1986). However, "Rule 60(b) contains 'extraordinary relief' which should be granted 'only under exceptional circumstances.'" Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986). Exceptional circumstances warrant vacature here.

First, attacks on subject matter jurisdiction cannot be waived and can be raised collaterally by non-appearing parties. "A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." Insurance Corp. of Ireland, LTD, et al. v. Compagnie des Bauxities de Guinee, 465 U.S. 694, 706 (1982). "A defendant who knows of an action but believes the court lacks jurisdiction over his person or over the subject matter generally has an election he may appear, raise the jurisdictional objection and ultimately pursue it on direct appeal.... [A]lternatively the defendant may refrain from appearing thereby exposing himself to the risk of a default judgment. When enforcement of the default judgment is attempted however, he may assert his jurisdictional objection." Practical Concepts, Inc. v. Republic of Bolivia, 811 F.2d 1543, 1547 (D.D.C. 1986). For this principle to have any meaning in the present context, ISS must be permitted to have its jurisdictional challenge assessed. Cf. Sisso v. Islamic Republic of Iran, 448 F.Supp.2d 76, 84 n.10 (D. D. C. 2006) ("If ignoring judicial proceedings effectively conferred jurisdiction over foreign states and claims against them, the rule permitting collateral attacks on jurisdictional grounds would largely be a dead letter for those defendants.").

Second, the equities favor deciding cases on their merits. "Generally, legal policy prefers case resolution on the merits ... [accordingly] there is a greater cause for liberality in reopening a case that has never been considered on the merits." Tuckerbrook Alternative Investments, LP, v. Banerjee, 754 F.Supp.2d 177, 180 (D. Mass. 2010). This is especially so in cases involving foreign sovereigns and their

12

instrumentalities. Cf. Practical Concepts, 811 F.2d at 1551-52 ("it is in the interest of United States' foreign policy to encourage foreign states to appear before our courts in cases brought under the FSIA.  When a defendant foreign state has appeared and asserts legal defenses, albeit after a default judgment has been entered, it is important that those defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments.").

Third, when a non-appearing foreign defendant collaterally raises substantial fact issues calling into question the court's subject matter jurisdiction even if they are insufficient to void the judgment under Rule 60(b)(4), the strength of such challenge may, nevertheless, favor Rule 60(b)(6) vacature.  As the court in First Fidelity Bank noted: "Doubts about the facts [of the case] weigh against declaring the default judgment void under Rule 60(b)(4); we cannot assess the validity of the default judgment because we know too little about the interwoven jurisdictional and substantive issues. We turn then to Rule 60(b)(6) ..." First Fidelity Bank, N.A., v. Government of Antigua & Barbuda-Permanent Mission, 877 F.2d 189, 196 (2d Cir. 1989) (vacating default judgment under Rule 60(b)(6) and reasoning "the fusion of substantive and jurisdictional issues [under the FSIA] militates in favor of setting aside the default judgment").  Here defendant raises a number of substantial factual challenges to plaintiff's contentions of ISS' alter ego status, ISS' and Merkuriy's commercial contacts in the United States, and ISS' waiver of sovereign immunity, all weighing in favor of vacature.

13

Fourth, the monetary amount of the default judgment at issue is extremely high. See Seven Elves, Incorporated, v. Eskenazi, et. al., 635 F.2d 396, 403 (5th Cir. 1981) (finding fact that defendants were adjudged liable for a "quarter of a million dollars without ever having their day in court" alone "militated in favor of a full trial" and vacating the prior default judgment under Rule 60(b)). Here, the amount of the judgment is approximately $383 million which is roughly 1,500 times the amount found to warrant Rule 60(b) vacature in Seven Elves.

Fifth, the default judgment did not include any findings on waiver, the commercial activities of ISS or Merkuriy, or ISS' sovereign immunity under the FSIA, and the findings therein contained were qualified. It specifically notes "in light of ISS' default, this court accepts Semtek's uncontested evidence as true." Docket # 25 at 3. "A court entering a default judgment may assume that it has jurisdiction over the defendant when the defendant does not appear in court to contest the judgment, but that assumption does not preclude the defendant from later contesting jurisdiction in the enforcing court." Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 730 (2d Cir. 1998) (internal citations omitted). Here, ISS, as a defaulting sovereign, is entitled to have the court consider its jurisdictional contentions since they have not previously been addressed. Sisso, 448 F.Supp.2d at 84 n.10 ("When the sovereign defendant defaults, the Court must examine the legal sufficiency of the plaintiff's assertion that an exception to sovereign immunity applies. Were that not the case, jurisdiction would spring from mere default, without regard to whether the defendant's conduct satisfied one of the immunity exceptions of section 1605.")

For these reasons, vacature under Fed. R. Civ. P. 60(b)(6) is warranted, therefore I need not address defendant's request under Rule 60(b)(3) .

## IV. Conclusion

Defendant's Motion to Vacate the Default Judgment (Docket # 32) ALLOWED.

    March 9, 2012                                 /s/Rya W. Zobel
       DATE                                      RYA W. ZOBEL
                                                 UNITED STATES DISTRICT JUDGE